FORM B104  (08/07)                                                                    2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>Lance Arthur Keating<br>29184 Flowerpark Drive<br>Canyon Country, California 91387 | DEFENDANTS<br>U.S. ROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE BY |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>in pro per | ATTORNEYS (If Known)<br>DARLENE C. VIGIL<br>PATHFINDER ROAD, SUITE 300<br>DIAMOND BAR, CA 91765 |

**FILED**

**OCT 18 2016**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

| PARTY (Check One Box Only)<br>☑ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☑ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

VIOLATION OF FDCPA 15 USC § 1692, 15 USC § 1641: TILA VIOLATIONS

---

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**

☐ 11-Recovery of money/property - §542 turnover of property

☐ 12-Recovery of money/property - §547 preference

☐ 13-Recovery of money/property - §548 fraudulent transfer

(1) ☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**

(2) ☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**

☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**

☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud

☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**

☐ 61-Dischargeability - §523(a)(5), domestic support

☐ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)

☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**

☐ 71-Injunctive relief – imposition of stay

☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**

☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**

☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**

☐ 01-Determination of removed claim or cause

**Other**

☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.

☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

---

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

FORM B104 (08/07), page 2                                                                    2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR<br>LANCE ARTHUR KEATING | BANKRUPTCY CASE NO.<br>2:16-bk-14882 |

| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL DISTRICT | DIVISIONAL OFFICE<br>LOS ANGELES | NAME OF JUDGE<br>Julia W. Brand |
|---|---|---|

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF<br>Lance Arthur Keating<br>29184 Flowerpark Drive<br>Canyon Country, California 91387 | DEFENDANT<br>U.S. ROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE | ADVERSARY PROCEEDING NO.<br>2:16-AP-01282-WB |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>CENTRAL | DIVISIONAL OFFICE<br>LOS ANGELES | NAME OF JUDGE<br>Julia W. Brand |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| *Lance Arthur Keating* (signature) | |
| DATE<br>10-18-2016 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Lance Arthur Keating |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

1

Lance Arthur Keating
29184 Flowerpark Drive
Canyon Country, California 91387
(818) 224-0986
in pro se



FILED

OCT 18 2016

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

2

3

4

5

6

7

8

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

9

10

11

In re

12

LANCE ARTHUR KEATING,

13

14

     Debtor

15

16

17

LANCE ARTHUR KEATING

18

    Plaintiff,

19

     v.

20

21

U.S. ROF III LEGAL TITLE TRUST 2015-1,
BY U.S. BANK NATIONAL ASSOCIATION,
AS LEGAL TITLE TRUSTEE, FAY
SERVICING, LLC , and DOES 1 to 50
inclusive

22

23

24

    Defendants.

25

26

Adv. Case No.:

CHAPTER 13

**RELATED CASE: 2-16-bk-14882-WB**

**VIOLATION OF 15 USC 1641,
VIOLATION OF TRUTH IN LENDING,**

27

## ADVERSARIAL ACTION REGARDING A VERIFIED COMPLAINT

28

COMES NOW, Lance Arthur Keating, to respectfully make this VERIFIED COMPLAINT for VIOLATION OF 15 USC 1641 and VIOLATION OF TRUTH IN LENDING

## CONSTITUTIONAL CLAIM AND RESERVATION OF RIGHTS

Lance Arthur Keating claims and exercises all Rights as guaranteed by the National Constitution including but not limited to Articles IV, V, VII, and IX and per the California State Constitution Article 1 Section 15, 16, 19 and 24.

Lance Arthur Keating has claimed, maintains, and has at all times retained his Constitutionally secured Rights especially, but not limited to, all aspects of this instant matter; *Brady v. U.S., 742 at 748*. *"Waivers of Constitutional Rights must not only be done voluntarily, they must be knowingly intelligent acts done with sufficient awareness of the relevant circumstances and consequences."*

At all times relevant to this action, Plaintiff Keating has had and continues to have a vested interest in the property as fee simple owner specific to this matter which he has not released to any party nor has any party offered or made settlement to Keating for all of his interest in said property.

Lance Arthur Keating, debtor in-possession alleges as follows:

## JURISDICTION AND VENUE

1. This adversary proceeding is brought pursuant to 11 U.S.C. §506 and Federal Rule of Bankruptcy Procedure 7001. This matter is an adversary proceeding which arises in the bankruptcy filing of the debtor.

2. Jurisdiction in this case is founded upon 15 U.S.C. § 1692k which grants the federal District Courts jurisdiction to hear this action without regard to the amount in controversy.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§151, 157 and §1334(b).

4. This adversary proceeding is a core proceeding as defined at 28 U.S.C. §157(b)(2)(b) and (b)(2)(K) in that it is an action to determine the nature, extent and validity of a lien on property evidenced by a deed of trust, and the allowance or

disallowance of a claim.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and jurisdiction exists pursuant to 11 U.S.C. § 502 (a) and (b) (1), 11 U.S.C. § 544 (a) (3) and (b) (1), 28 U.S.C. 1334, 28 U.S.C. 2201 for declaratory relief and 28 U.S.C. 1367 for pendent state claims.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409. The Defendants are subject to the personal jurisdiction of this Court. Fed. R. Bank. P. 7004(f).

6.  Venue is proper since the transaction occurred in Los Angeles County and the real property in question is located within Los Angeles County, the State of California.

7.  This action is superior to other available alternative methods for the fair and efficient adjudication of this controversy.

## THE PARTIES

8.  Plaintiff, Lance Arthur Keating, is an individual, and debtor of the within captioned bankruptcy case who filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on April 15, 2016, Case No. 2:16-bk-14822-WB.  Plaintiff Keating is listed on a certain original GRANT DEED issued on August 1, 2007 to subject property in dispute.

9.  Plaintiff is an individual having standing to bring this action pursuant to 11 U.S.C. 323. 1302 and 1330.

10. Plaintiff is and at all times mentioned herein is the owner and purchaser of real property (hereinafter referred to as "subject property") and more particularly described at 29184 Flowerpark Drive, Canyon Country, CA 91387 or as:

"Lot 149 Tract 25797, in the City of Santa Clarita, County of Los Angeles, State of California, as per map recorded in book 770, page(s) 57 to 64 inclusive of maps, in the office of the County Recorder of said County"

11. Plaintiff is informed and believes and thereupon alleges Defendant U.S. ROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE, hereinafter "ROF-III" is a Trust engaged in a banking business including Mortgage Backed Securities with headquarters at 60 LIVINGSTON

AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107 and is attempting to lay a claim on the

property as a real party in interest and a Beneficiary.

12. Plaintiff is informed and believes and there upon alleges Defendant FAY

SERVICING, LLC, hereinafter "FAY" is a business entity whose home office is located

at 440 S. LaSalle St #2000 Chicago, IL 60605 and doing business in the State of

California is a debt collector, and attempts to collect a debt.

13. The true names and capacities, whether individual corporate associate or

otherwise of Defendants, names herein as DOES 1 through 50, are unknown to Plaintiff

at this time, who therefore, sues said Defendants by such fictitious names. Plaintiff will

seek leave of Court to amend this Complaint to show the true names, capacities and

relationship of said fictitious Defendants when same have been ascertained.

14. Plaintiffs allege that each of them were the agents, servants, employees,

representatives, associates and/or joint venturers of one another, and that at all such

times, in doing the acts and making the representations alleged herein, Defendants

were each, respectively and collectively, acting within the course and scope of said

agency, servitude, employment and/or joint venture, with a mutual and common

purpose, for the direct and indirect benefit of each of their several co-defendants, with

the full knowledge, consent, ratification, and approval of each of their several co-

defendants, and in so acting, through direct assignment or succession in interest, are

jointly and severally responsible in some manner, for all said acts, events, occurrences,

or representations made by one another.

## STATEMENT OF FACTS

15. Plaintiff, Lance Arthur Keating, allegedly executed a Deed of Trust, hereinafter

"DOT" (See as Annexed herein, a true and correct copy of DOT marked as "EXHIBIT A"

and incorporated herein by this reference.) on July 27, 2007 and recorded at the Los

Angeles County Recorder's Office on August 1, 2007 as document number 20071817904.

Said DOT listed SECURITYNATIONAL MORTGAGE COMPANY as the "Lender".

16. Plaintiff, Lance Arthur Keating, allegedly executed an ADJUSTABLE RATE

NOTE , hereinafter "NOTE" (See as Annexed herein, a true and correct copy of NOTE marked as "EXHIBIT A" and incorporated herein by this reference.) on July 27, 2007. Said NOTE listed SECURITYNATIONAL MORTGAGE COMPANY as the "Lender".

17. On January 6, 2010, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., hereinafter "MERS", purported beneficiary under the DOT executed a SUBSTITUTION OF TRUSTEE, hereinafter "SOT" allegedly substituting RECONTRUST COMPANY, N.A., as the new Trustee under said DOT (See as Annexed herein, a true and correct copy of SOT 1 marked as "EXHIBIT C" and incorporated herein by this reference.). Said SOT 1 was recorded on January 12, 2010 at the Los Angeles County Recorder's Office as document No.: 20100040067.

18. On February 9, 2011 MERS executed a CORPORATION ASSIGNMENT OF DEED OF TRUST purportedly assigning all beneficial interest to BAC HOME LOANS SERVICING, LP, hereinafter "BAC" (See as Annexed herein, a true and correct copy of ASSIGNMENT 1 marked as "EXHIBIT D" and incorporated herein by this reference.). Said ASSIGNMENT 1 was recorded on February 12, 2011 at the Los Angeles County Recorder's Office as document No.: 20110239020.

19. On March 12, 2014 BANK OF AMERICA executed an ASSIGNMENT OF DEED OF TRUST purportedly assigning all beneficial interest to U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 REMIC TRUST III, hereinafter "PROF-2013" (See as Annexed herein, a true and correct copy of ASSIGNMENT 2 marked as "EXHIBIT E" and incorporated herein by this reference.). Said ASSIGNMENT 2 was recorded on MAY 12, 2014 at the Los Angeles County Recorder's Office as document No.: 20140488942.

20. On November 11, 2014 FAY SERVICING, LLC as attorney in fact for PROF-III purportedly substituted BARRETT DAFFIN FRAPPIER TREDER &, WEISS, LLP, hereinafter "BDF" as new Trustee under the original DOT (See as Annexed herein, a true and correct copy of SOT 2 marked as "EXHIBIT F" and incorporated herein by this reference.). Said SOT 2 was recorded on November 20, 2014 at the Los Angeles County

Recorder's Office as document No.: 20141246749.

21. On April 30, 2015 BDF executed a NOTICE OF DEFAULT AND ELECTION TO SELL, hereinafter "NOD" (See as Annexed herein, a true and correct copy of NOD marked as "EXHIBIT G" and incorporated herein by this reference.). Said NOD was recorded on MAY 4, 2015 at the Los Angeles County Recorder's Office as document No.: 20150511155.

22. On August 10, 2015 BDF executed a NOTICE OF TRUSTEE'S SALE, hereinafter "NOTS" (See as Annexed herein, a true and correct copy of NOTS marked as "EXHIBIT H" and incorporated herein by this reference.). Said NOTS was recorded on August 12, 2015 at the Los Angeles County Recorder's Office as document No.: 20150984882.

23. On September 25, 2015 BDF executed a TRUSTEE'S DEED UPON SALE, hereinafter "TDUS" (See as Annexed herein, a true and correct copy of TDUS marked as "EXHIBIT I" and incorporated herein by this reference.). Said TDUS was recorded on September 29, 2015 at the Los Angeles County Recorder's Office as document No.: 20151204077.

24. On January 15, 2016 U.S. ROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE, hereinafter " ROF III filed an Unlawful Detainer Complaint in LOS ANGELES COUNTY SUPERIOR COURT Case No.: 16P00222 against Plaintiff Keating (See as Annexed herein, a true and correct copy of Complaint marked as "EXHIBIT J" and incorporated herein by this reference.). The true names and capacities, whether individual corporate associate or otherwise of Defendants, names herein as DOES 1 through 50, are unknown to Plaintiff at this time, who therefore, sues said Defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to show the true names, capacities and relationship of said fictitious Defendants when same have been ascertained.

25. Plaintiff alleges that each of them were the agents, servants, employees, representatives, associates and/or joint venturers of one another, and that at all such

times, in doing the acts and making the representations alleged herein, Defendants

were each, respectively and collectively, acting within the course and scope of said

agency, servitude, employment and/or joint venture, with a mutual and common

purpose, for the direct and indirect benefit of each of their several co-defendants, with

the full knowledge, consent, ratification, and approval of each of their several co-

defendants, and in so acting, through direct assignment or succession in interest, are

jointly and severally responsible in some manner, for all said acts, events, occurrences,

or representations made by one another.

## FIRST CAUSE OF ACTION

## MOVANT IS IN VIOLATION OF 15 USC 1641 - LIABILITY OF ASSIGNEES

26. Defendant, ROF III never acquired the rights to this property through any

legal means such as an assignment as evidenced by Declaration of Charles Koppa, an

independent Expert Witness (See as Annexed herein, a true and correct copy of said

Declaration and marked as "EXHIBIT K" and incorporated herein by this reference, of

which the original will be made available for any evidentiary hearing). Under this Federal

Liability of Assignees Act ROF-III had a duty to record the assignment wherein ROF III

became the new assignee. There is no public notice of any kind verifying the

assignment or sale of a mortgage loan to U.S. ROF III, pursuant to and in compliance

with 15 USC §1641(g)(1)(D) wherein:

"(1) In addition to other disclosures required by this subchapter, not later than 30

days after the date on which a mortgage loan is sold or otherwise transferred or

assigned to a third party, the creditor that is the new owner or assignee of the

debt shall notify the borrower in writing of such transfer, including—

(D) the location of the place where transfer of ownership of the debt is

recorded."

As of the moment of the drafting of this Complaint, Defendant still has not recorded any

purported Assignment in the Los Angeles County Recorder's Office.

## SECOND CAUSE OF ACTION

## RESPONDENT RESCINDED THE MORTGAGE UNDER TILA

27. On February 11, 2010 within the 3 year Statute of Limitations under the Truth In Lending Act Plaintiff exercised his right of rescission and sent Notice of such to several entities including BANK OF AMERICA, N.A., hereinafter "BANA" (See as Annexed herein, true and correct copy of Notice of Rescission marked as "EXHIBIT L" and incorporated herein by this reference.). BANA responded with a return letter on April 12, 2010 (See as Annexed herein, true and correct copy of Reply to Notice of Rescission marked as "EXHIBIT M" and incorporated herein by this reference.) denying Plaintiff's right to rescind but never filing a court action within 20 days of Notice as required under the recent UNITED STATES SUPREME COURT decision of Jesinoski and thus BANA waived any right to challenge said rescission. The Notice of Rescission sent to BANA created a void original Deed of Trust and Defendant ROF-III is subject to this waived right void.

28. Furthermore, Defendant cannot claim there was any kind of novation regarding said Mortgage when Defendant became involved in 2014. On June 16, 2015 and well within the 3 year provision and once again under the Truth In Lending Act Plaintiff exercised his right of rescission. Plaintiff sent Notice of Rescission to FAY (See as Annexed herein, true and correct copy of Notice of Rescission marked as "EXHIBIT N" and incorporated herein by this reference.). FAY responded with a return letter on June 25, 2015 (See as Annexed herein, true and correct copy of Reply to Notice of Rescission marked as "EXHIBIT O" and incorporated herein by this reference.) denying Plaintiff's right to rescind but never filing a court action within 20 days of Notice pursuant to the recent Jesinoski decision and thus FAY waived any right to challenge said rescission. The Notice of Rescission sent to FAY created a second void of original DOT and Defendant is also subject to this second waived right void.

**PRAYER**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For an order compelling said Defendants, and each of them, to transfer legal title and to the subject property to Plaintiff herein;

2. For a declaration and determination that Plaintiff is the rightful holder of title to the property and that Defendants herein, and each of them, be declared to have no estate, right, title or interest in said property;

3. For a judgment forever enjoining said Defendants, and each of them, from claiming any estate, right, title or interest in the subject property;

4. For an ORDER causing Defendant's to record into the Los Angeles County Recorder's Office a Rescission of Notice of Default, a Rescission of Substitution of Trustee and a Rescission of The Notice of Trustee's Sale;

5. For an ORDER causing Defendant's to record into the Los Angeles County Recorder's Office a Rescission of any Trustee's Deed Upon Sale that may have been filed;

6. For an ORDER causing Defendants to record into the Los Angeles County Recorder's Office a Revocation of the Deed of Trust and a full reconveyance thereof;

7. For general and special damages in excess of the sum of $535,980 according to proof at time of trial.

9. For costs of suit herein incurred;

10. For whatever else the Court may deem fit to award.

Respectfully submitted,

Date: *10-18-2016*

By: _/Lance Arthur Keating/_
Lance Arthur Keating
Debtor in Possession

**VERIFICATION**

The undersigned Plaintiff, Lance Arthur Keating, hereinafter "Plaintiff", does solemnly declare and state as follows:

    1. Plaintiff is over the age of 18 years.

    2. Plaintiff is competent to state the matters set forth herein.

    3. Plaintiff has knowledge of the facts stated herein.

    4. All the facts herein are true, correct and complete, not misleading, to the best of Plaintiff's knowledge and belief, and admissible as evidence, and if called upon as a witness, Plaintiff will testify to their veracity.


I swear under Penalty of Perjury under the laws of the United States of America and the State of California the foregoing is true and correct. Executed on _____10-15-2016_____.

               By: _____
                      Lance Arthur Keating

# EXHIBIT A

CALIFORNIA TITLE COMPANY

After Recording Return To:

SECURITYNATIONAL
MORTGAGE COMPANY
5300 SOUTH 360 WEST
SUITE 150
MURRAY, UTAH 84123
LOAN NO.:   0000388915



08/01/07

20071817904

ESCROW NO.: 031342-RL
TITLE NO.: 897783-64
PARCEL NO.: 2837-014-002

MIN NO.:   1000317-0000388915-7

[SPACE ABOVE THIS LINE FOR RECORDING DATA]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated __JULY      27__ , __2007__ , together with all Riders to this document.

(B) "Borrower" is
__LANCE A. KEATING, AN UNMARRIED MAN__

Borrower is the trustor under this Security Instrument.

(C) "Lender" is
__SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION__

Lender is a __A UTAH CORPORATION__ organized and existing under the laws
of __CALIFORNIA__ . Lender's address is _____
__5300 SOUTH 360 WEST SUITE 150; MURRAY, UTAH 84123__

(D) "Trustee" is
__FIRST SOUTHWESTERN TITLE COMPANY__ .

(E) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS       Form 3005 1/01
*DOCPREP SERVICES, INC. FORM - MDOTCA1-3105*          Page 1 of 15
                                      ORIGINAL

410-897783-64

(F) "Note" means the promissory note signed by Borrower and dated JULY    27   ,  2007  . The
Note states that Borrower owes Lender _____
   FOUR HUNDRED FORTY FIVE THOUSAND FIVE HUNDRED AND 00/100—————————— Dollars
(U.S. $    445,500.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  AUGUST    01  ,  2037  .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders
are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider      [ ] Condominium Rider            [ ] Second Home Rider

[ ] Balloon Rider              [ ] Planned Unit Development Rider  [ ] Assumption Rider

[ ] 1-4 Family Rider           [ ] Biweekly Payment Rider        [ ] Inter Vivos Trust Rider

[ ] Other(s) [specify]:

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable
judicial opinions.

(K) "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)
conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or
any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under
RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not
that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

LOAN NO.:  0000388915                        Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-3I35           Page 2 of 15
                                              ORIGINAL

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance

LOAN NO.:   0000388915                          Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-31S                 **Page 4 of 15**
                                                            **ORIGINAL**

with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obigated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by,

LOAN NO.:    0000388915                          Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-3105                    Page 5 of 15
                                                              ORIGINAL

or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been

LOAN NO.:   0000388915                                          Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005 1/01
DOCPREP SERVICES, INC. FORM - MDOTCA1-3105          Page 6 of 15
ORIGINAL

completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

LOAN NO.:    0000388915                                Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        Form 3005  1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCAL-3105                Page 7 of 15
                                                        ORIGINAL

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

LOAN NO.:  0000388915                                Initials _____ _____ _____ _____ _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-3105            Page 8 of 15
                                                     ORIGINAL

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has-if any-with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

LOAN NO.:  0000388915                                    Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS         Form 3005 1/01
*DOCPREP SERVICES, INC. FORM - MDOTCA1-3105*              Page 9 of 15
                                                         ORIGINAL

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

LOAN NO.:   0000388915                                    Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS              Form 3005 1/01
*DocPrep Services, Inc.* FORM - MDOTCA1-3105                    Page 10 of 15
                                                    ORIGINAL

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN NO.:   0000388915                                Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-3105                    Page 11 of 15
ORIGINAL

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

LOAN NO.:    0000388915                                    Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS       Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-3185          Page 12 of 15
ORIGINAL

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligaton on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the Notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

LOAN NO.: 0000388915                                    Initials: ___  ___  ___  ___  ___

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCA1-3105                   Page 13 of 15
                                                          ORIGINAL

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                                             -Borrower
                                     LANCE A. KEATING

_____    _____ (Seal)
                                                             -Borrower

                                     _____ (Seal)
                                                             -Borrower

                                     _____ (Seal)
                                                             -Borrower

                                     _____ (Seal)
                                                             -Borrower

                                     _____ (Seal)
                                                             -Borrower

LOAN NO.:    0000388915

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS       Form 3005 1/01
DocPrep Services, Inc. FORM - MDOTCA1-3105              Page 14 of 15
                                                       ORIGINAL

——————————— [Space Below This Line For Acknowledgment] ———————————

STATE OF CALIFORNIA
COUNTY OF *Los Angeles*                                    } SS

On *July 27 2007* before me, *ROSE M. LUCERO, NOTARY PUBLIC* personally appeared,
<u>(Notary Name and Title)</u>
<u>LANCE A. KEATING</u>

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

(Notarial Seal)

LOAN NO.:   0000388915

ROSE M. LUCERO
Commission # 1736010
Notary Public - California
Los Angeles County
My Comm. Expires Apr 19, 2011

### REQUEST FOR RECONVEYANCE

TO TRUSTEE:

   The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes,
together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby
directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey,
without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally
entitled thereto.

Dated: _____                         _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - MDOTCAI-3105                    Page 15 of 15
                                                               ORIGINAL

*17*

# ADJUSTABLE RATE RIDER
### (MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this          27TH     day of JULY          , 2007
, and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument and
located at:
29184 FLOWERPARK DRIVE
Canyon Country, CALIFORNIA 91387

[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT
THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.    INTEREST**
**(A)  Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I
will pay interest at a yearly rate of      2.000     %. The interest rate I will pay may change.
    The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 7(B) of the Note.

**(B)  Interest Rate Change Dates**
The interest rate I will pay may change on the          1ST          day of SEPTEMBER     ,
     2007          , and on that day every month thereafter. Each date on which my interest
rate could change is called an "Interest Rate Change Date." The new rate of interest will become
effective on each Interest Rate Change Date. The interest rate may change monthly, but the
monthly payment is recalculated in accordance with Section 3.

LOAN NO.:   0000388915
PayOption MTA ARM Rider
FE-5315 (0511)                        Page 1 of 5
                                      ORIGINAL

Initials

*18*

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding   THREE AND 725/1000   percentage point(s)   3.725  % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than   9.950  %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the   1ST   day of each month beginning on SEPTEMBER   01 , 2007 . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST   01 , 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 5300 SOUTH 360 WEST, SUITE 150
MURRAY, UTAH 84123
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $   1,646.65   unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1ST   day of   SEPTEMBER  , 2008  , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

LOAN NO.:  0000388915
PayOption MTA ARM Rider                    Page 2 of 5   Initials
FE-5315 (0511)                              ORIGINAL

19

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075.  The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to One Hundred and Fifteen        percent (    115.00 %)of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**

On the     fifth      Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

LOAN NO.:  0000388915

PayOption MTA ARM Rider                    Page 3 of 6   Initials

FE-5315 (0511)                             ORIGINAL

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i)  **Interest Only Payment:**  the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii)  **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

LOAN NO.:  0000388915
PayOption MTA ARM Rider
FE-5315 (0511)

Initials _____  ___  ___  ___  ___  ___

Page 4 of 5
**ORIGINAL**

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ -Borrower
LANCE A. KEATING

_____ -Borrower

_____ -Borrower

_____ -Borrower

LOAN NO.:   0000388915
PayOption MTA ARM Rider
FE-5315 (0511)                          Page 5 of 5
                                        ORIGINAL

SECURITYNATIONAL
MORTGAGE COMPANY
5300 SOUTH 360 WEST
SUITE 150
MURRAY, UTAH 84123
APN # 2837-014-002
LOAN NO.:    0000388915
ESCROW # 031342-RL
TITLE ORDER # 897783-64

———————————————— [SPACE ABOVE RESERVED FOR RECORDER] ————————————————

ATTACHED TO DEED OF TRUST / MORTGAGE DATED:    JULY    27, 2007

Loan No:  0000388915

Property Address:

29184 FLOWERPARK DRIVE; Canyon Country, CALIFORNIA 91387

# EXHIBIT A

## LEGAL DESCRIPTION

*Initials* _____  _____  _____  _____

*DOCPREP SERVICES, INC.*  FORM - EXHIBITA-0466

ORIGINAL

Order No. 897783-64

# Exhibit "A"

Lot 149 Tract 25797, in the City of Santa Clarita, County of Los Angeles, State of California, as per map recorded in book 770, page(s) 57 to 64 inclusive of maps, in the office of the County Recorder of said County.

# EXHIBIT B

# ADJUSTABLE RATE NOTE
(MTA-Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

JULY   27   , 2007                          NEWPORT BEACH          , CALIFORNIA
      [Date]                                   [City]                        [State]

      29184 FLOWERPARK DRIVE
      Canyon Country, CALIFORNIA 91387
                 [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   445,500.00   (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed   One Hundred and Fifteen percent (115%)   of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   2.000  %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the   1ST   day of   SEPTEMBER   , 2007   , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE and 725/1000   percentage point(s)   3.725  % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than   9.950  %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the   1ST   day of each month beginning on SEPTEMBER   01 , 2007 . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST   01 , 2037   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   5300 SOUTH 360 WEST, SUITE 150
MURRAY, UTAH 84123
or at a different place if required by the Note Holder.

LOAN NO.:   0000388915
MIN NO.:   1000317-0000388915-7
**PayOption ARM Note - MTA Index**
FE-5312 (0511)

Initials _____

**(B)   Amount of My Initial Monthly Payments**
    Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S.
$    1,646.65      unless adjusted under Section 3 (F).

**(C)   Payment Change Dates**
    My monthly payment may change as required by Section 3(D) below beginning on the    1ST
day of    SEPTEMBER    , 2008    , and on that day every 12th month thereafter. Each
of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F)
or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount
the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as
provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of the
interest due then negative amortization will occur.
    I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or
as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Monthly Payment Changes**
    At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the
monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment
Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the
month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."Unless
Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will
not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap."
This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments
Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the
amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below
requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and
the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)   Additions to My Unpaid Principal**
    Since my monthly payment amount changes less frequently than the interest rate, and since the monthly
payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less
than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay
the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal
payments. For each month that my monthly payment is less than the interest portion, the Note Holder will
subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to
my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by
Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will
apply the payment as provided in Section 3 (A).

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**
    My unpaid Principal can never exceed the Maximum Limit equal to    115.00    percent of the Principal
amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments
and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to
exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change
more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new
Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the
Maturity Date in substantially equal payments at the current interest rate.

**(G)   Required Full Payment**
    On the    fifth    Payment Change Date and on each succeeding fifth Payment Change Date
thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes
again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)   Payment Options**
    After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment
options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the
following Payment Options:
        (i)     **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment
        at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is
        only available if the interest portion exceeds the Minimum Payment.
        (ii)    **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at
        the Maturity Date in substantially equal payments.
        (iii)   **15 Year Amortized Payment:**  the amount necessary to pay the loan off (Principal and Interest)
        within a fifteen (15) year term from the first payment due date in substantially equal payments. This
        monthly payment amount is calculated on the assumption that the current rate will remain in effect for
        the remaining term.
    These Payment Options are only applicable if they are greater than the Minimum Payment.

LOAN NO.:   0000388915
MIN NO.:   1000317-0000388915-7
PayOption ARM Note - MTA Index
FE-5312 (0511)

Initials _____

Page 2 of 4
ORIGINAL

**4.   NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)   Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)   No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

LOAN NO.:   0000388915
MIN NO.:   1000317-0000388915-7
PayOption ARM Note · MTA Index
FE-5312 (0511)

Initials _____ _____ _____ _____

Page 3 of 4
ORIGINAL

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**PREPAYMENT ADDENDUM TO NOTE ATTACHED HERETO AND MADE A PART HEREOF.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____    (Seal)
LANCE A. KEATING                                             -Borrower

_____    (Seal)
                                                                          -Borrower

_____    (Seal)
                                                                          -Borrower

_____    (Seal)
                                                                          -Borrower

LOAN NO.:    0000388915                          MIN NO.:    1000317-0000388915-7
PayOption ARM Note - MTA Index
FE-5312 (0511)                                Page 4 of 4
                                             ORIGINAL

# EXHIBIT C



This page is part of your document - DO NOT DISCARD

## 20100040067



Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/12/10 AT 08:00AM**

| | |
|---|---:|
| FEES: | 12.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 12.00 |



**LEADSHEET**

201001120200003

00001768682

002485390

**SEQ:
19**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T46

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY

AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., SV2-202
SIMI VALLEY, CA 93063



01/12/2010

*20100040067*

ATTN: Manjit Ghataura
TS No. 08-0094829

08-8-346a44

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

WHEREAS, LANCE A. KEATING, AN UNMARRIED MAN was the original Trustor, FIRST
SOUTHWESTERN TITLE COMPANY was the original Trustee, and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that
certain Deed of Trust dated 07/27/2007 recorded on 08/01/2007 as Instrument No. 20071817904
in Book Page of Official Records of Los Angeles County, California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and
WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in
place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said
Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A.,
WHOSE ADDRESS IS: 1800 Tapo Canyon Rd., SV2-202 SIMI VALLEY, CA 93063, as
Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or
neuter, and the singular number includes the plural.

DATED: January 06, 2010                MORTGAGE ELECTRONIC REGISTRATION
                                       SYSTEMS, INC.

                                  )

State of:    **CALIFORNIA**              BY: _____
                                       Gary Nord, Assistant Secretary
County of:     **Ventura**       )

On 01/06/2010 before me, Manjit Kaur Ghataura , notary public, personally appeared
Gary Nord, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature: Manjit Kaur Ghataura            (Seal)

MANJIT KAUR GHATAURA
Commission # 1786816
Notary Public - California
Ventura County
My Comm. Expires Jul 18, 2011

Form sub (01/09)  (195)

# EXHIBIT D

2

RECORDING REQUESTED BY:

RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT**

**AND TAX STATEMENTS TO:**

RECONTRUST COMPANY
1800 Tapo Canyon Rd., SV2-202
SIMI VALLEY, CA  93063



02/14/2011

*20110239020*

TS No. 08-0094829

8-3410944

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 07/27/2007, EXECUTED BY:
LANCE A. KEATING, AN UNMARRIED MAN, TRUSTOR: TO FIRST SOUTHWESTERN TITLE COMPANY,
TRUSTEE AND RECORDED AS INSTRUMENT NO. 20071817904 ON 08/01/2007, OF OFFICIAL RECORDS IN
THE COUNTY RECORDER'S OFFICE OF LOS ANGELES  COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND
TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID
DEED OF TRUST/MORTGAGE.

DATED: September 03, 2008                **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

FEB 0 9 2011

G N

State of:    California        )      BY: _____    FEB 1 0 2011

County of:    Ventura          )      Gary Nord, Assistant Secretary

On FEB 1 0 2011 _____ before me, _____, notary public, personally appeared
_____GARY NORD_____, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.



K. CISNEROZ
Commission # 1818170
Notary Public - California
Los Angeles County
My Comm. Expires Oct 18, 2012

Signature _____        (Seal)

130

Form asgnmnt (01/09)

# EXHIBIT E



**This page is part of your document - DO NOT DISCARD**



# 20140488942



**Pages: 0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/12/14 AT 11:41AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201405121000017

00009169003



006185750

**SEQ:
01**

ERDS - Daily

**THIS FORM IS NOT TO BE DUPLICATED**

E12

#942

Recording Requested By:
**Bank of America**
Prepared By: Yomari Quintanilla
**101 S. Marengo Ave.**
**Pasadena, CA 91101**
**800-444-4302**

When recorded mail to:
**Fay Servicing, LLC C/O: Robert (Tres)**
**Mackey**
**Ref: Trailing Documents - USROF/NB**
**939 W. North Avenue Suite 680**
**Chicago, IL 60642**

DocID#    10417243276312554

Property Address:
**29184 Flowerpark Drive**
**Canyon Country, CA 91387-1863**

CA0-ADT 28839906   3/11/2014  FAY0151

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 REMIC TRUST III**, whose address is **60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107, ATTENTION: STRUCTURED FINANCE SERVICES – PROF** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Beneficiary: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION, ITS SUCCESSORS AND ASSIGNS** |
| Original Borrower(s): | **LANCE A. KEATING, AN UNMARRIED MAN** |
| Original Trustee: | **FIRST SOUTHWESTERN TITLE COMPANY** |
| Date of Deed of Trust: | **7/27/2007** |
| Original Loan Amount: | **$445,500.00** |

Recorded in Los Angeles County, CA on: 8/1/2007, book N/A, page N/A and instrument number 20071817904

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

**MAR 1 2 2014**

**BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP**

By: _____

**Miguel Romero**
Assistant Vice President

State of California
County of Ventura

On __MAR 1 2 2014__ before me, _____*Danya Bucaro*_____, Notary Public, personally appeared
___Miguel Romero___, who proved to me on the basis of satisfactory evidence to be the person
(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

DANYA BUCARO
Commission # 1880386
Notary Public - California
Los Angeles County
My Comm. Expires Mar 15, 2014

Notary Public: ____*Danya Bucaro*____         (Seal)
My Commission Expires: _*March 15, 2014*_

DOC ID# 10417243276312554

# EXHIBIT F

**This page is part of your document - DO NOT DISCARD**





# 20141246749



Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/20/14 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201411200210006

00009867112

006507749

**SEQ:**
**01**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

t96

Recording requested by:
**TITLE 365**

When Recorded Mail To:
**BARRETT DAFFIN FRAPPIER TREDER &
WEISS, LLP
15000 Surveyor Boulevard, Suite 500
Addison, Texas   75001-9013**

APN #: 2837-014-002
Property Address:
**29184 FLOWERPARK DRIVE
CANYON COUNTRY, CALIFORNIA   91387**



SUB00000004678017

11/20/2014



*20141246749*

Space above this line for Recorder's use only

Trustee Sale No. :   00000004678017  Title Order No.:   730-1405435-70

# SUBSTITUTION OF TRUSTEE

WHEREAS, LANCE A. KEATING was the original Trustor, FIRST SOUTHWESTERN TITLE COMPANY was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR SECURITYNATIONAL MORTGAGE COMPANY, A UTAH CORPORATION, ITS SUCCESSORS AND ASSIGNS was the original Beneficiary Recorded on 08/01/2007 as Instrument No. 20071817904 of official records in the Office of the Recorder of Los Angeles County, California, as more fully described on said Deed of Trust.; and WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said prior Trustee.

NOW, THEREFORE, the undersigned hereby substitutes, BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP, WHOSE ADDRESS IS:   15000 Surveyor Boulevard, Suite 500, Addison, Texas   75001-9013, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:

_11-13-14_

State of _Illinois_
County of _Cook_

Fay Servicing, LLC, as attorney in fact for U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 REMIC TRUST III

Name: _VIKKI M PALUMBO_
Title: _Sr. Foreclosure Specialist_

On _11-13-14_ before me, _Michael McGee_ , Notary Public, personally appeared _Vikki M Palumbo_ who is known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _Michael McG_ (Seal)

My commission expires: _July 2, 2018_

OFFICIAL SEAL
MICHAEL MCGEE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES JUL. 2, 2018

FCUS_SubstituteOfTrustee_M.rpt - 01/22/2014 - Ver 16                                                      Page 1 of 1

# EXHIBIT G



**This page is part of your document - DO NOT DISCARD**

## 20150511155







**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/04/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |



**L E A D S H E E T**



201505040210002

00010521417



006805293

**SEQ:**
**04**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T96

Recording requested by:
TITLE 365

When Recorded Mail To:
BARRETT DAFFIN FRAPPIER TREDER &
WEISS, LLP
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

APN #: 2837-014-002
Property Address:
29184 FLOWERPARK DRIVE
CANYON COUNTRY, CALIFORNIA 91387


DFF00000004678017


05/04/2015
*20150511155*

Space above this line for Recorder's use only

Trustee Sale No : 00000004678017          Title Order No.: 730-1405435-70

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

ATTENTION RECORDER: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES
ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI
LIỆU NÀY

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN
YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you
may have the legal right to bring your account in good standing by paying all of your past due
payments plus permitted costs and expenses within the time permitted by law for reinstatement of your
account, which is normally five business days prior to the date set for the sale of your property. No sale
date may be set until approximately 90 days from the date this Notice of Default may be recorded
(which date of recordation appears on this notice).

This amount is $203,770.62 as of 04/30/2015 and will increase until your account becomes current.
While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes)
required by your note and deed of trust or mortgage. If you fail to make future payments on the loan,
pay taxes on the property, provide insurance on the property, or pay other obligations as required in
the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order
to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a
condition of reinstatement that you provide reliable written evidence that you paid all senior liens,

FCUS_NoticeOfDefault.rpt - Record - (05/1/2013) - Ver-40                                    Page 1 of 3

IMPORTANT NOTICE

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Trustee Sale No. : 00000004678017          Title Order No.: 730-1405435-70

property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

<div align="center">

FAY SERVICING LLC
c/o BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(855) 286-5901

</div>

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 07/27/2007, executed by LANCE A. KEATING, as Trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), as Beneficiary Recorded on 08/01/2007 as Instrument No. 20071817904 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $445,500.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

Trustee Sale No. : 00000004678017      Title Order No.: 730-1405435-70

THE, INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 04/01/2008
AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET
FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR
TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO
THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE
LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under said Deed of Trust and/or its loan servicer hereby
declare(s) all obligations secured thereby immediately due and payable, invoke(s) the power of sale
under said Deed of Trust, and elect(s) to sell the property described therein in satisfaction of those
obligations without prejudice to any other default remedies permitted by applicable law.

DATED: 04/30/2015

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP as Trustee for Beneficiary

By:

Elaina Moore, Associate Attorney

# EXHIBIT H



**This page is part of your document - DO NOT DISCARD**



# 20150984882



Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**08/12/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**LEADSHEET**



201508120110010

00010989205



007016630

**SEQ:
18**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**



T96

E34931

Recording requested by:
**TITLE 365**

When Recorded Mail To:
**BARRETT DAFFIN FRAPPIER TREDER &
WEISS, LLP**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas  75001-9013**
**(855) 286-5901**

APN #: 2837-014-002
Property Address:
**29184 FLOWERPARK DRIVE**
**CANYON COUNTRY, CALIFORNIA  91387**

NOTS00000004678017

08/12/2015

*20150984882*

Space above this line for Recorder's use only

Trustee Sale No. : 00000004678017       Title Order No.: 730-1405435-70        FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

**ATTENTION RECORDER:** THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES
ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI**
**LIỆU NÀY**

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 07/27/2007. UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A
LAWYER.

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP,** as duly appointed Trustee under and pursuant to Deed
of Trust Recorded on 08/01/2007 as Instrument No. 20071817904 of official records in the office of the County
Recorder of LOS ANGELES County, State of CALIFORNIA.
**EXECUTED BY:** LANCE A. KEATING,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH
EQUIVALENT or other form of payment authorized by California Civil Code 2924h(b), (payable at time of sale in
lawful money of the United States).
**DATE OF SALE:**    09/10/2015        **TIME OF SALE:**    10:00 AM
**PLACE OF SALE:**      BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC
CENTER PLAZA, POMONA CA.
**STREET ADDRESS** and other common designation, if any, of the real property described above is purported to be:
29184 FLOWERPARK DRIVE, CANYON COUNTRY, CALIFORNIA 91387
**APN#:**    2837-014-002

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common
designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied,

18

Trustee Sale No.: **00000004678017**    Title Order No.: **730-1405435-70**    FHA/VA/PMI No.:

regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$635,767.25**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 916-939-0772 for information regarding the trustee's sale or visit this Internet Web site www.nationwideposting.com for information regarding the sale of this property, using the file number assigned to this case 00000004678017. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
**NATIONWIDE POSTING & PUBLICATION A DIVISION OF FIRST AMERICAN TITLE INSURANCE COMPANY 1180 IRON POINT ROAD, SUITE 100 FOLSOM, CA 95630 916-939-0772 www.nationwideposting.com**

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP as Trustee**

_____    Dated: **08/10/2015**
BY: Josh Bermudez

This is a true and certified copy of the record
If it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

AUG 2 4 2015

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

# EXHIBIT I

 

**This page is part of your document - DO NOT DISCARD**



# 20151204077



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**09/29/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |

 



**L E A D S H E E T**

201509293250033

**00011185111**

007104112

**SEQ:**
**01**

**ERDS - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



3861763 kr

E235463

RECORDING REQUESTED BY:

Barrett Daffin Frappier Treder & Weiss, LLP
15000 Surveyor Blvd., Suite 500
Addison, Texas 75001

WHEN RECORDED MAIL TO AND MAIL
TAX STATEMENT TO:

U.S. ROF III LEGAL TITLE TRUS .et al
c/o FAY SERVICING LLC
440 S. LASALLE ST.
20TH FLOOR
CHICAGO, IL 60605

---

TS No.:  0000004678017                                    Space above this line is for Recorder's use only
Order No.:  730-1405435-70

## 3861763        TRUSTEE'S DEED UPON SALE

The undersigned grantor declares:
1) The Grantee herein **WAS** the foreclosing beneficiary.
2) The amount of the unpaid debt together with cost was:      $633,886.39
3) The amount paid by the grantee at the trustee sale was:     $375,000.00
4) The documentary transfer tax is **$0.00**
5) Said property is in the city of **CANYON COUNTRY**
6) APN #**2837-014-002**

**Barrett Daffin Frappier Treder & Weiss, LLP** (herein called Trustee), as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to:

**U.S. ROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE**

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of **LOS ANGELES**, State of **California**, described as follows:

"See Legal Description Attached as Exhibit 'A'"

RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated **07/27/2007** and executed by **LANCE A. KEATING** Trustor(s), and recorded on **8/1/2007** as Instrument No. **20071817904** of official records of **LOS ANGELES** County, **California** and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with.

First American Mortgage Solutions
As An Accommodation Only

TS No.:  00000004678017                          Order No.:  730-1405435-70

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the
herein described property at public auction on **9/10/2015**. Grantee, being the highest bidder at said sale, became the purchaser
of said property for the amount bid being **$375,000.00** in lawful money of the United States, or by credit bid if the Grantee
was the beneficiary of said Deed of Trust at the Time of said Trustee's Sale.

Dated:    September 25, 2015

Barrett Daffin Frappier Treder & Weiss, LLP as Trustee

By:   Jesus Angulo

**Jesus Angulo**
**Operations Manager**

STATE OF    **TEXAS**                      }
                                                                §
COUNTY OF    **DALLAS**                 }

On 9/25/15 before me, **Kellie C. Boswell** , personally appeared **Jesus Angulo** ,who proved to me on the basis of satisfactory
evidence (identified by TX DL) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

Signature

KELLIE C BOSWELL
Notary Public, State of Texas
My Commission Expires
**09/19/2018**

TS No.:  00000004678017                         Order No.:  730-1405435-70

# EXHIBIT A

LOT 149 TRACT 25797, IN THE CITY OF SANTA CLARITA, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK
770, PAGE(S) 57 TO 64 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

# EXHIBIT J

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JAN 15 2016

Sherri R. Carter, Executive Officer/Clerk
By: Miraya Casuga, Deputy

1  | TYNEIA G. MERRITT, ESQ., (SBN 235750)
2  | MERRITT LAW, INC., dba MLG of CA
   | 10670 CIVIC CENTER DRIVE, SUITE 130
3  | RANCHO CUCAMONGA, CA 91730
   | Telephone: (909) 476-0651
   | Facsimile: (909) 476-7029
4  | Email:   tye@mlawinc.com

5  | Attorney for Plaintiff, U.S. ROF III LEGAL TITLE TRUST 2015-1

6

7

8

9  |           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 |           COUNTY OF LOS ANGELES - PASADENA COURTHOUSE

11 | U.S. ROF III LEGAL TITLE TRUST 2015-1, )   Case No.:  **16P00222**
12 | BY U.S. BANK NATIONAL                  )
   | ASSOCIATION, AS LEGAL TITLE            )   COMPLAINT FOR UNLAWFUL
13 | TRUSTEE                                )   DETAINER
                                           )
14 |                          Plaintiff,    )   LIMITED CIVIL JURISDICTION
                                           )
15 |     vs.                                )   **ACTION BASED ON CCP §1161a**
                                           )
16 |                                        )   AMOUNT DEMANDED DOES NOT
   | LANCE A. KEATING,                      )   EXCEED $10,000
17 | and DOES 1-100, Inclusive              )
                                           )   Property Address: 29184 FLOWERPARK
18 |                          Defendants.   )   DRIVE, CANYON COUNTRY, CA 91387;
                                           )   APN: 2837-014-002
19

20

21 |     Plaintiff, U.S. ROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL

22 | ASSOCIATION, AS LEGAL TITLE TRUSTEE ("U.S. ROF III LEGAL TITLE TRUST 2015-

23 | 1") alleges as follows:

24 |     1.  Plaintiff is entitled to possession of, and is the owner of record of a parcel of real property

25 |         located at 29184 FLOWERPARK DRIVE, CANYON COUNTRY, CA 91387; APN:

26 |         2837-014-002 (the "Property").  Said Property is located within the above-referenced

27 |         Judicial District and County.

28

-1-

COMPLAINT FOR UNLAWFUL DETAINER

2. Defendant(s) at all times herein mentioned resided in the State of California, County of LOS ANGELES.

3. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant(s) named herein as Does 1-100, inclusive, and each of them, are unknown to Plaintiff and therefore, plaintiff sues these Defendant(s) under California Code of Civil Procedure 474, and prays leave to amend this Complaint to insert their true names and capacities when ascertained. These defendants will be served pursuant to California Code of Civil Procedure §415.46.

4. Possession of the Property is sought pursuant to California Code of Civil Procedure § 1161a.

5. Plaintiff, U.S. ROF III LEGAL TITLE TRUST 2015-1, obtained title to the Property and right to possession by its purchase at a Trustee's Sale held on September 10, 2015. The particulars are as follows:

   a. Defendant(s), LANCE A. KEATING, executed as Trustor(s) a Deed of Trust, with power of sale, recorded on or about August 1, 2007 in the Official Records of LOS ANGELES County, California as Instrument Number 20071817904, which Deed of Trust encumbered the Property.

   b. Under the power of sale contained in the Deed of Trust, and pursuant to the foreclosure and sale of the Property, the Property was sold in compliance with California Civil Code section 2924.

6. Plaintiff's legal title to the Property was perfected by the recording of the Trustee's Deed Upon Sale with the LOS ANGELES County Recorder's Office. A copy of the Trustee's Deed Upon Sale is attached as Exhibit "A" and incorporated by reference.

-2-

COMPLAINT FOR UNLAWFUL DETAINER

7. Defendant(s) is the former trustor of the Deed of Trust or a holdover occupant of the former trustor.

8. Plaintiff is informed, believes, and thereon alleges that Defendant(s) LANCE A. KEATING, and each of them are and remain in possession of the Property.

9. On or about October 12, 2015, Plaintiff caused to be served on Defendant(s) and "All Occupants in Possession" of the Property with a written NOTICE TO QUIT and NOTICE TO VACATE (90 days) (hereinafter referred to as "Notices") pursuant to California Code of Civil Procedure §1162.

10. Copies of the Notices are attached hereto respectively as Exhibits "B" and Exhibit "C" and incorporated by reference.

11. A copy of the Proof of Service of the Notices is attached hereto as Exhibit "D" and incorporated by reference.

12. On or about October 12, 2015, Plaintiff caused to be served on Defendant(s) and Does 1 through 100 a written NOTICE TO ANY RENTERS pursuant to California Code of Civil Procedure §1161(c). A copy of the Notice to Any Renters is attached as Exhibit "E." A copy of the Proof of Service of the Notice to Any Renters is attached hereto as Exhibit "D" and incorporated by reference.

13. The Notices required Defendant(s) to vacate and surrender possession of the Property.

14. The NOTICE TO QUIT AND NOTICE TO VACATE expired at midnight on January 11, 2016, and since January 12, 2016, Plaintiff is and has been entitled to immediate possession of the Property.

15. Defendant(s) and each of them have failed and refused to surrender possession of the Property within or since the NOTICE TO QUIT AND NOTICE TO VACATE period, and continue in possession of the Property without Plaintiff's consent.

16. Plaintiff demands possession of the Property.

17. Plaintiff is informed, believes, and thereon alleges that the reasonable value of the Property is $50.00 per day, and that damages to the Plaintiff proximately caused by Defendant(s)' unlawful detention of the Property have accrued since January 12, 2016, and will continue to accrue at that rate so long as Defendant(s) remain in possession of the Property.

18. Plaintiff hereby requests that this court take judicial notice of a certified copy of the Trustee's Deed Upon Sale at the time of trial.

WHEREFORE, Plaintiff requests judgment as follows:

1.  For possession of the Property;

2.  For damages for the unlawful detention of the Property at the rate of $50.00 per day from January 12, 2016, until entry of judgment.

3.  For costs of suit.

4.  For such other and further relief as the Court deems appropriate.

DATED: 1/13/16

MERRITT LAW, INC. dba MLG of CA

TYNEIA G. MERRITT, ESQ.
Attorney for Plaintiff,
U.S. ROF III LEGAL TITLE TRUST 2015-1

-4-

**COMPLAINT FOR UNLAWFUL DETAINER**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFICATION

I, _____Daren M. Perez_____, declare:
(name)

I am a(n) _____REO Manager_____ for Fay Servicing,
LLC, the Servicer and Attorney-In-Fact for Plaintiff, a party to this action.

Under its power of attorney from plaintiff, Fay Servicing, LLC is authorized and
appointed by plaintiff to bring unlawful detainer actions and execute verifications of pleadings,
including this verification, on behalf of the plaintiff.

I am authorized to make this verification on Plaintiff's behalf, and I make this
verification for that reason. I have read the foregoing Complaint for Unlawful Detainer and
know its contents. The matters stated in the foregoing document are true of my own knowledge,
except as to those matters which are stated on information and belief, and as to those matters I
believe them to be true.

**Pursuant to California Rules of Court, Rule 2.305(d), my signature by
facsimile set forth below shall be deemed an original signature.**

I declare under penalty of perjury under the laws of the State of California that
the foregoing is true and correct. Executed on __4/12/16_____.

(Signature)

_____Daren M. Perez_____
Print Name

-1-

**VERIFICATION**

# EXHIBIT K

**State of California, County of Los Angeles**
Superior Court Case Number: 16P00222
For Lance A. Keating
29184 Flowerpark Dr. Canyon Country, CA 91387

### Declaration of Charles Koppa
**Expert Witness, Title and Financial Research**

I, Charles John Koppa, have been a resident of California for more than 25 years. I am a forensic title and financial auditor. My credentials are attached. I am competent to research uncontroverted evidence of documents recorded in the Official Records any County Recorder's Office, to outline a complete Chain of Title, Chain of legal Authority, to offer opinions of real estate values, and to identify missing, inaccurate or fabricated documents and loan issues that can be competently explained.

I was retained by **Lance A. Keating** regarding his real property at **29184 Flowerpark Dr., Canyon Country, CA 91387**. If called upon, I am prepared to testify as an Expert Witness in Foreclosure and Quiet Title Proceedings regarding recordation's, supporting Property Detail Reports, Tax Status, Chain of Title Summary and Comparative Property Values.

I conducted a **homeowner's** examination of recordation's from Los Angeles County public records for the property owned by **Mr. Keating**. I file this Declaration in support of Client pending action.

**In the opinion of Declarant, a Judicial Court must consider triable issues of fact raised herein:**

1) Lack of Standing by Barrett, Daffin, Frappier, Treder and Weiss, **"BDF"**, FAY Financial, LLC, **"FAY"** Fay Servicing, LLC, **"FAY"**, ROF III TITLE TRUST 2015-1 BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TRUSTEE **"ROF"** (the Plaintiff in the instant case) US Bank National Association, and Title 365, to render VOID any Notice of Default, Notice of Trustee Sale or Trustee's Deed Upon Sale.

2) Failure to comply with CCC 2952 regarding fictitious filings due to hand-written changes on the original Deed of Trust after signature by legal Trust or Keating.

3) **"ROF"** III, foreclosing entity, is *outside the chain of title* for failing to properly record any transfer to them pursuant to California Civil Code §2932.5 and Federal Code 15USC§1641(g)(1)(D). Both statutes require the recording of a new assignment or sale by the new owner or assignee; and Federal Laws require notification to the homeowner of the location of the recorded document within 30 days of the change in the property rights as well. Thus, ROF had no authority to order a Notice of Default, Notice of Trustee Sale or Trustee's Deed Upon Sale.

4) Unfair business practices and violations of California Civil Codes and California Commercial Codes by Bank of America, NA, **"FAY","** **BDF"** and their affiliates for jointly failing to have standing in the public record regarding the original Deed of Trust and foreclosure process, and failing to stand in the shoes of the Original Trustee, *FIRST SOUTHWESTERN TITLE COMPANY.*

5) The Substitution of Trustee, "SOT", governed by California Civil Code 2934-(a), recorded as document number 20141246749 on November 20th, 2014, was purportedly authorized by FAY Servicing, LLC, as attorney in fact for US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR **PROF-2013-S3 REMIC TRUST III**. FAY Servicing, LLC, was not acting as attorney in fact for ROF III TITLE TRUST **2015-1,** the Plaintiff in this matter. More importantly, *said SOT was not executed in conformity with Califomia Civil Code § 1095*, which governs records of attorneys in fact. Consequently, the SOT was *void ab initio* and the foreclosure process was not conducted in compliance with California foreclosure codes.

6) Subsequently, after the SOT document, which had no force and effect, was recorded on November 20th, 2014, the sham Trustee **"BDF"** then caused to be recorded a Notice of Default, **"NOD"**, document number 20150511155 on May 4th, 2015, and Notice of Trustee's Sale, **"NOTS"**, document number 20150984882 on August 12th, 2015. However, since the rogue trustee **BDF** had no authority to act in a

foreclosure concerning Lance Keating's property, the NOD process and the NOTS were also *void ab initio*. There could be no compliance with California foreclosure codes and therefore ROF cannot hold a duly perfected title.

7)  In addition, California Civil Code §2934(a) governing substitution of trustees in the foreclosure process requires a **MAJORITY ACTION AFFIDAVIT** AS OUTLINED IN California Civil Code §2941.9 and the separate Affidavit document must be attached to the SOT.  The two documents must be recorded together in the county recorder's office where the property is located.  There was no such Affidavit attached to the SOT and this fact evidences further lack of compliance with CA Foreclosure Cdes.  Once again, no duly perfected title.

8) The Trustee's Deed Upon Sale **"TDUS"**, document number 20151204077, specifically lists ", **ROF III TITLE TRUST 2015-1** BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TRUSTEE  **as both** the lien foreclosing beneficiary and grantee as stated:

"The undersigned grantor declares: 1) the grantee herein WAS the foreclosing beneficiary"; and yet, according to publicly recorded documents, the purported beneficiary is PROF-2013-S3 REMIC Trust III.  ROF is not the owner of beneficial interest, is outside the chain of title with no authority to order any foreclosure proceedings to be conducted by rogue Trustee BDF.  *Thus, a TDUS cannot deliver duly perfected Land OR Legal Title.*  To award possession to **ROF III** is tantamount  to allowing an Unlawful Delivery of real property to US ROF III Legalv2015-1 1 Trust when their exclusive right stated for the NOTS auction warned of **"bidding on a lien, not on the property itself"** especially since the foreclosure process was unlawful for reasons noted above.

9) The original mortgage transaction was rescinded due to undisclosed and false documents pursuant to the Truth In Lending Act (TILA) and upheld under U S Supreme Court Decision, Jesinoski v Countrywide, January 13th, 2015.  Said rescission (by Operation of Law) occurred on February 10th, 2010 when letters of rescission were sent via certified mail to the following entities/persons:

By Certified mail# 7009 1410000070041255
MR JOE PRICE, CFO BAC HOME LOANS SERVICING, LP
BANK OF AMERICA CORPORATE CENTER
100 NORTH TRYON STREET
CHARLOTTE, NORTH CAROLINA 28255-0001

By Certified mail# 70091410000070041309
MR GREG MARKARIAN, CFO RECONTRUST COMPANY, NA.
1800 TAPO CANYON ROAD, SV2-202
SIMI VALLEY, CALIFORNIA 93063

By Certified mail# 7009 1410 0000 7004 1316
GEORGE R QUIST, CEO SECURITYNATIONAL MORTGAGE COMPANY
5300 SOUTH 360 WEST, SUITE 150
MURRAY, UTAH 84123

By Certified mail# 7009 1410 0000 7000 1198 VERONICA THOMAS
CALIFORNIA TITLE COMPANY
100 NORTH FIRST STREET, #404
BURBANK, CALIFORNIA 91502

The Subject matter dictates continued possession of the property by action in a court of proper venue and unlimited jurisdiction to issue a Summary Judgment to Quiet Title Award to owner occupant Keating.

I declare that the foregoing facts are true and correct and this would be my testimony in a court of law.

*Charles J Koppa*                                          8/16/2016
Charles J. Koppa, Expert Witness, 760-787-9966                        Date

# PROFESSIONAL SUMMARY

## Charles J. Koppa
**Expert Witness - Litigation Support**
**Ramona, CA  92065  (San Diego)**
**760-787-9966**
opinion2@yahoo.com

1. **Education:**　　　　University of Minnesota, BS Business: Marketing/Finance/Accounting

2. **Expertise:**　　　　Knowledge of integrated interactive intelligent information systems.

3. **Business Travels:** Million-Miler, 49 US States, Most of Europe

4. **Developer:**　　　　Microfiche Standards, Internet Databases, KWIC/KWOC Document Indexing

5. **Presenter:**　　　　"Words, Images, Data, and Telecommunications: Integrated
Information Systems in the Eighties"

6. **Integrator:**　　　　Nationwide Real Estate Register, prior to DataQuick, Realist, CoreLogic,
RealQuest, RealtyTrac, Zillow, et al, **for automated valuations, data and image
storage and retrieval for 80 million homes/loans throughout America.**

7. **Trainer:**　　　　"Tracking Title Information & Plat Maps"

8. **Retired Realtor:**　Closed over 300 client escrows

9. **Retired Loan Officer:** Pre-Qualified over 1000 prospects

10. **Retired Investor:** Previously owned a dozen homes in San Diego County

11. **National Sales Manager:** NCR Special Products Division, Microform Systems

12. **Honors:**　　　　Information Management Congress Fellow #24

13. **Auditor:**　　　　Fraud in Title, Loan, Securitization, Trustee, Foreclosures, and Creditor Issues

14. **Researcher:**　　　**Title Analyses, Loan Audits, Securitization/Foreclosure/Trustee Histories,**

15. **Expert Witness:**　**Land Title Issues, Unlawful Foreclosures**

16. **Lecturer/Writer:**　**"Defaulted American Dreams", "Charting Foreclosure Tyranny", "Shield My
Title", "Replace THEIR RMBS with a _LienerLien_™","Sam's White Papers"**

17. **Contributor:**　　**www.livinglies.me, www.MSfraud.org**
**HARPER'S, Jan 2012 Cover, "Stop Payment!"**
**TORONTO STAR, 1/29/12 "Why The American Dream Could Come To An End"**

**I am not a Lawyer.  MY InfoSam opinions do not constitute legal advice.  Always consult an attorney.
Affiliates: TitleTrail.com, SamsNation.com, LeanerLien.com, MERScurse.com, ItWasYours.com, etc.**

©www.TitleTrail.com

# EXHIBIT L

Mail all correspondence to:
LANCE A. KEATING c/o RITA THOMAS, NOTARY ACCEPTOR
481 NORTH SERANADO STREET
ORANGE, CALIFORNIA 92869

**To:**
MR. JOE PRICE, CFO
BAC HOME LOANS SERVICING, LP
BANK OF AMERICA CORPORATE CENTER, 100 NORTH TRYON STREET
CHARLOTTE, NORTH CAROLINA 28255-0001

MR GREG MARKARIAN, CFO
RECONTRUST COMPANY, N.A.
1800 TAPO CANYON ROAD, SV2-202
SIMI VALLEY, CALIFORNIA 93063

GEORGE R. QUIST, CEO,
SECURITYNATIONAL MORTGAGE COMPANY
5300 SOUTH 360 WEST, SUITE 150
MURRAY, UTAH 84123

VERONICA THOMAS
CALIFORNIA TITLE COMPANY
100 NORTH FIRST STREET, #404
BURBANK, CALIFORNIA 91502

"MERS" PO BOX 2026 FLINT, MI  48501-2026

**Re:**    Original Loan # 172432763; APN: 2837-014-002
Commonly Known Address: 29184 FLOWERPARK DR.,
CANYON COUNTRY, CALIFORNIA 91387
Deed of Trust Record: #20071817904 - Record Date 08/01/2007

## Notice of Right to Cancel
Notice to Agent is Notice to Principal - Notice to Principal is Notice to Agent

**Parties:** LANCE A. KEATING  (Alleged Borrower, hereinafter **Borrower**) – and, BAC HOME LOANS
SERVICING, LP, RECONTRUST COMPANY, N.A., SECURITYNATIONAL MORTGAGE
COMPANY, and CALIFORNIA TITLE COMPANY (Alleged Lender(s)/Agent(s) – hereinafter
**Lenders**)

Attention: BAC HOME LOANS SERVICING, LP, RECONTRUST COMPANY, N.A.,
SECURITYNATIONAL MORTGAGE COMPANY, and CALIFORNIA TITLE COMPANY

This communication will serve as our *Notice of Right to Cancel* dated February 10, 2010. TILA (Truth in
Lending Act, 15 USC §1601 et seq; 12 CFR Part 226) allows three (3) years to review Disclosure
Documents.  The referenced 'Three Day Right to Cancel' must have a trigger to begin. That trigger, is
when the Lender has provided the Borrower with ALL of the required Disclosures under TILA, and that
the same are true, complete, accurate, and timely provided.

Being as the entire purported loan/mortgage process and Deed of Trust referenced herein and throughout, was obtained by wrongful acts of fraud, fraudulent inducement, concealment, and fraudulent misrepresentation, the borrower has other recourse, right, and cause of action under numerous state and federal statutes. Acts of fraud taint/void everything it touches as the US Supreme Court has declared:

*"There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments."* (United States v. Throckmorton, 98 U.S. 61)

To this date, Lender has never provided Borrower with true, complete, accurate or timely documents as required. ONLY AFTER such provision has been done, can the '3 DAY RIGHT TO CANCEL' period begin. If the required full Disclosure(s) have not been provided, then the period in which to Cancel is extended for up to three (3) years, OR until Lender moves to foreclose. The records thus far evidence, that **Borrower** has requested to cancel within the stipulated three year time period, while still waiting to receive all Truth-in-Lending disclosures as required by Federal Law, the same of which have never been received.

A close perusal/audit of Borrower's mortgage documents has revealed certain Disclosure Violations; and, that the Borrower has the remedial right and remedy (UCC 1-201 (32) (34)), inter alia, to invoke his Right of Rescission (ROR) as further evidenced by the original NOTICE OF RIGHT TO CANCEL. You will also please find Borrower's signed and dated NOTICE to the Lender(s), Successor(s) and Beneficiary as stated on the NOTICE OF RIGHT TO CANCEL, if provided in the loan package. If such Notice was not provided, **this written Notice of communication is provided in lieu thereof**.

After sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s) and to CANCEL any security interest on the Borrower's home within **seven (7) days**. The Lender must also return any money, interest, fee, and/or property to Borrower, as well as any money/funds given to any persons or other fiction in law/entity in connection with said transaction.

In accordance with both State and Federal law or until the Lender complies, Borrower may retain the proceeds of the transaction. If it should be 'impractical' or 'unfair' for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered - then he/she/they may offer its 'Reasonable Value'.

In the event the Lender should fail or refuse to take possession of the property or return the borrower's money offer within **seven (7)** days, **borrower** may then regain/acquire all rights to clear title and re-conveyance under Federal Law and provisions of TILA.

**Additionally,** Borrower has the right to offer Lender a Reasonable Value. **However,** the penalty that a bank can face for violations of TILA and other State and Federal law can be as much as triple damages . . . i.e., triple the amount of the interest the bank stood to fraudulently make off of the mortgage/loan transaction. Therefore, the borrowers hereby in good faith make the following offer: Borrower will forgive BAC HOME LOANS SERVICING, LP any liability incurred by its wrongful actions, provided BAC HOME LOANS SERVICING, LP rightfully forgive Borrower the full amount of mortgage/credit you fraudulently allege to have given. In addition, Borrower makes the one time demand of $1,544,126.07 for any loss, damage, and injury he has sustained; and, that BAC HOME LOANS SERVICING, LP also removes all/any negative comments on Borrower's credit report attributed to this transaction.

Any default, failures, or non-compliance on the Lender's part to perform as herein directed within **twenty (20) days** of receipt shall constitute this Notice of Right to Cancel as valid and fully agreed/accepted pursuant to the terms and conditions as set forth herein and throughout.

**AUTHORIZATION TO RELEASE LOAN INFORMATION: I hereby authorize you to release all loan information requested to RITA THOMAS a third party NOTARY PUBLIC**

**Notice of Right to Cancel**

x _____
LANCE A. KEATING

**ACKNOWLEDGEMENT**

STATE OF CALIFORNIA          )
                             ) Scilicet
COUNTY OF ORANGE             )

On February 11, 2010, before me, Rita P. Thomas, Notary Public, personally appeared Lance-Arthur: Keating, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

My Commission Expires _Feb. 9, 2013_____

RITA P. THOMAS
COMM. #1836337
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 9, 2013

# EXHIBIT M

**Bank of America**
Home Loans

1757 Tapo Canyon Road
Mailstop CA6-913-02-29
Simi Valley, CA  93063

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED #7009 2820 0001 7060 7177**

April 12, 2010

Lance A. Keating
29184 Flowerpark Drive
Canyon Country, CA 91387

Re:    BAC Loan Number:      172432763
       Property Address:     29184 Flowerpark Drive, Canyon Country, CA 91387

Dear Mr. Keating:

BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. ("BAC Home Loans"), is in
receipt of your letter dated February 11, 2010, wherein you are giving notice to rescind the above-
referenced mortgage loan transaction based on violations of the federal Truth in Lending Act  and
Regulation Z (collectively "TILA").

TILA provides that if required notices or material disclosures are not delivered to the consumer, the right
to rescind shall expire three (3) years after consummation of the loan.  As part of our thorough
investigation of this matter, the loan file was reviewed.  The right of rescission found in TILA does not
apply to purchase money transactions, and it is evident from our review that the proceeds from the
subject loan enabled you to acquire the subject property.  Consequently, there is not an extended right to
rescind the subject loan pursuant to TILA.

Based on the foregoing, your claim to rescind the mortgage loan transaction is denied and this matter is
now closed.  The remainder of your letter will be responded or has been responded to under separate
cover.  In providing this response, BAC Home Loans is making no admission of any TILA violations
related to this transaction.  Please feel free to contact me in writing should you have any questions or
need additional information.

Sincerely,

Steve Pacheco
Litigation Specialist

# EXHIBIT N

Tuesday, June 16, 2015

Attention:
- **Ed Fay CEO of FAY SERVICING**
- **James Lawlor**, debt collector for Fay Servicing
- E. Stewart, debt collector for Fay Servicing
- Ben Morris Non-Compliance Department Fay Servicing
- **Elaina Moore**, Associate Attorney (BDF) Barrett Daffin Frapper Treder & Weiss, LLP
- **Tanya McCullah** (BDF)
- and any other 3rd party debt collecting CEO or agent of Bank of America, US BANK, FAY SERVICING or BDF working on this case.

From:
I, a man, lance keating aka Lance Arthur Keating, LANCE ARTHUR KEATING living at 29184 Flowerpark Drive, Canyon Country, California [FTZ 91387]

Reference: Mr. Keating's mortgage/lien, loan transaction.
- original unsecured discharged in BK mortgage loan under SecurityNational Mortgage Company, A Utah Corporation # **0000388915** APN 2837-014-002, Bank of America's unsecured loan # **172432763**, for the home located at: 29184 Flowerpark Drive, Canyon Country, California [91387]
- Deed of Trust Record: #20071817904 – Recorded Date 08/01/2007
- present fraudulent account number # **47626** under **Fay Servicing** and
- present BDF Trustee Sale(Not) # **4678017, Title Order No. 730-1405435-70**

This communication will serve as my ***Notice of Right to Cancel*** under **TILA (Truth in Lending Act, 15 USC 1601 et seq; 12 CFR Part 226)** dated June 16, 2015.

On or about August 1, 2007, I, a man and living soul, was coerced, deceived and defrauded by acts of Non-disclosure and with lack of consideration was enticed to put my signature on forms and other documents referred to as Loan Account Loan # 0000388915 which has changed to  # 172432763, 47626, and now TS # 4678017.

Because of the act of Non-disclosure, Mis-representation and for reasons that no equal consideration was given me, which makes any agreement VOID, **I hereby rescind** any and all forms, documents, contracts, and the like, acted upon on or about August 1, 2007. All unconscionable contracts are subject to rescission under the common law and Admiralty Law for failure to make the proper disclosures; where there is no meeting of the minds there is no contract as required by §226.23(b)91) regarding notice to rescind as set forth in In re Pearl Maxwell v. Fairbanks Capitol corporation, 281 B.R. 101,2002Bankr. Lexis 759.  The UCC addresses unconscionability in §2-302.

I waive and reject any and all benefits expressed or implied arising from any such signatures, all resulting contracts, agreements or trusts resulting from force, deceit, under threat of arms, involuntary servitude and peonage, committed against myself while reserving all rights to re-express or restate any of the said documents as the original Grant/Trustor.

Ed Fay, James Lawlor, Ben Morris, Elaina Moore, Tanya McCullah please take notice. This next article comes from a web page that exposes the whole **Mortgage Bubble Foreclosure Scam** that is still destroying homes and families all across this country. Come on ladies and gentlemen…who's the one who wants a free house?  Read this?

The real problem for the banks and servicers is not that they will get screwed by rescission despite all PR to the contrary.

## They have no skin in the game: they have neither funded nor purchased any loans.

 And THAT is their problem. They are not filing lawsuits to vacate the rescission (which is effective by operation of law on the day it was mailed); and the reason is that **they have no party that actually has standing**. They can't come in and assert standing based upon the the <u>allegation</u> that they "hold" the note and mortgage because <u>both of those instruments are void since the moment the notice of rescission was dropped in the mail</u>. <u>They can't assert standing on the basis of an instrument that is void on its face</u> and by operation of law.

So they would need a party to step up and assert that they are the creditor by virtue of having funded or purchased the loan and then that party would need to prove it.

They would need to plead that without the note and mortgage they will suffer some sort of damage. And THEN they would need to allege that the rescission should be VACATED because of the statute of limitations or that the loan does not fit the description in the statute --- all questions of fact that must be raised during the 20 day window before they are in violation of TILA rescission statutes.

<u>They can't do that because the money that went into the loan came from investors in direct breach of the securitization agreements</u>. **So nobody in the chain alleged by the banks and servicers actually has any economic risk or injury from the rescission.** <u>No injury=no standing</u>.

The investors are the real "creditors." But they only have claims in <u>equity that are unsecured</u> because by contract they are barred from raising direct claims against borrowers and they were never in privity with the borrower nor were they ever in privity <u>with the **sham** nominee entities in the chain. Even huge entities like Countrywide were used as **sham conduits** to obscure the path of the money and obscure the ownership of the loan. In fact, even the big banks were acting not as lenders but as **sham nominees** in an elaborate scheme in which false claims of securitization were asserted and litigated as though they were real</u>. **The end result was that the "Lenders" never showed at closing and never showed up in court**. *(This is why the bankruptcy judge Ordered Mr Keating, a Discharge on this particular Mortgage)*

TILA Cancellation and Rescission of Mortgage loan #388915 #172432763, #47626

The banks and servicers used the vacuum created by "securitization fail" (See Adam Levitin) to step in as though they had the <u>right to grab property and money in violation of various contracts, laws and rules governing their behavior</u>.

https://mail.google.com/mail/u/0/?pli=1#inbox/14df737a2256df34

Mr. Lawlor, if you have read this and honestly understand it, then how can you proceed with this? I hope everybody reading this doesn't have a MERS mortgage, because if you do, you are holding a Pandora's Box.

The economy is run by the big banks and **when they crash the economy again**, they will have no mercy on debt collecting/foreclosing agents who lose their job to third world countries like the Philippines, or India where many people speak fluent English with little accent. They're English is getting better and better each year. Pretty soon your job will go to these people.

How are you going to defend yourself from MERS and Servicers like Fay and BDF who keep coming after you to put you out on the street <u>so they can snatch up your house for **free**</u> and get another schmuck to put down a big down payment for a 30 yr MERS mortgage Scam contract?

The banks and servicers will treat you like a slave with chains of DEBT, produced by scamming innocent people into 30 year MERS mortgages, paying a big down payment and having 360 monthly payments to <u>overpay</u> the value of their home by 3x which is 30 yrs older by then.

Meanwhile the banks bundle everybody's mortgages into UNSECURED MBS, sell them, default on them, collect TARP, insurance and bailout money and use the proceeds to ship American industry and debt collecting jobs off to foreign lands so they can pay foreign workers lower wages. Meanwhile the debt collectors back home are without a job to pay for their MERS mortgage and are getting nasty letters and phone calls from foreclosure mills and debt collecting agents.

Oh, I hear the phone ringing; It must be a Fay Servicing or US BANK agent calling you again to take away your precious home and put you out on the streets because you were unfortunate enough to get caught up in the MERS mortgage scam, like a fish in the net.

Wake up! Wake up! Wake up! You are next. We live in the Gulag State. The Gulag State of America. I rescind, I rescind, I rescind under TILA.

**IF NOTICE OF RESCISSION IS SENT, THE LOAN IS OVER AND THE NOTE AND MORTGAGE ARE VOID BY OPERATION OF LAW --- NO LAWSUIT OR TENDER OF MONEY OR PROPERTY REQUIRED. PERIOD.**

https://mail.google.com/mail/u/0/?pli=1#inbox/14d9b18aefa8d424

i, a man, lance keating

TILA Cancellation and Rescission of Mortgage loan #388915 #172432763, #47626

# EXHIBIT O

# FAY
# SERVICING

June 25, 2015

Lance A. Keating
29184 Flowerpark Dr
Canyon Country, CA 91387

RE:                     Account Number:          0000047626
                        Property Address:        29184 Flowerpark Dr, Canyon Country, CA 91387

Dear Mr. Keating:

We are in receipt of your correspondence dated June 06, 2015, regarding the above-referenced account and property. In your correspondence, you state you wish to exercise your right to rescind under regulation 12 CFR 226.23- Right of rescission.

Please understand that the laws cited by 12 CFR 226.23 do not apply to the account as the original mortgage loan was a residential purchase-money mortgage loan. Enclosed is a copy of the Uniform Residential Loan Application dated August 27, 2007, indicating the loan was a residential purchase-money loan. As such, residential purchase-money loans do not have the right to rescind.  Included is a copy of the Security Instrument as well.

The account currently indicates due for the April 01, 2008 mortgage payment in the amount of $2,215.36. The total amount due to bring the account current is $207,397.22.

Enclosed is a Borrower Assistance Form (BAF) for your convenience.

We trust the information provided has addressed the concerns outlined in your letter. Should you have any further questions, please feel free to contact your Account Manager, James Lawlor, at 312-291-3707 or jlawlor@fayservicing.com

Sincerely,

Compliance Department
Fay Servicing, LLC

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Jay L. Roberts
16654 Soledad Canyon Rd.
Canyon Country, CA 91387

A true and correct copy of the foregoing document described as ***VERIFIED COMPLAINT*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); or **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***October 7, 2016***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On ***October 18, 2016,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge Julia W. Brand US BANKRUPTCY COURT 255 EAST TEMPLE ST. LOS ANGELES, CA 90012
U.S. Trustee UNITED STATES TRUSTEE (LA) 725 SOUTH FIUUEROA ST., 26th FLOOR  LOS ANGELES, CA 90017
Trustee Nancy Curry (TR) 1000 WILSHIRE BL SUITE 870 LOS ANGELES, CA 90017
JAMES T. LEE 20955 PATHFINDER RD SUITE 300 DIAMOND BAR, CA 91765
MARK LUTHER & ELEDA LUTHER 29184 FLOWERPARK DR CANYON COUNTRY, CA 91387

☐ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_NA_,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
Judge's Chambers    ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 18 , 2016 | Jay L. Roberts | _(signature)_ |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*    **F 9013-3.1.PROOF.SERVICE**