FILED & ENTERED

JUL 14 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kaaumoan DEPUTY CLERK

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LANCE ARTHUR KEATING,<br><br>                                    Debtor(s). | CHAPTER 13<br><br>Case No.:  2:16-bk-14882-WB<br>Adv No:    2:16-ap-01465-WB<br><br>**MEMORANDUM OF DECISION** |
| LANCE ARTHUR KEATING,<br><br>                                    Plaintiff(s),<br>     v.<br><br>U.S. ROF III LEGAL TITLE TRUST 2015-1 ET AL.,<br><br>                                    Defendant(s). | Date:         May 10, 2017<br>Time:         2:30 PM<br>Courtroom: 1375 |

Before the Court is an emergency motion for a temporary restraining order ("Motion") (Adv. Docket No. 20) filed by plaintiff-debtor Lance Arthur Keating ("Debtor"). In the Motion, Debtor requests that the Court issue an order enjoining all defendants in this adversary proceeding from conducting any further foreclosure or eviction action with respect to certain real property, which Debtor has designated as his primary residence. Currently, the only eviction

proceeding pending against Debtor is a Los Angeles Superior Court case filed by defendant U.S. ROF III Legal Title Trust 2015-1 ("U.S. ROF III"). On April 6, 2017, the Court issued a temporary restraining order against U.S. ROF III pending an April 12, 2017 hearing on Debtor's Motion ("the Interim TRO") (Adv. Docket No. 26). No opposition to the Motion was filed in advance of the April 12 hearing.

U.S. ROF III appeared at the April 12 hearing by and through its state court counsel of record. Debtor appeared on his own behalf. After taking oral argument from the parties, the Court continued the hearing on Debtor's Motion to May 10, 2017 to allow U.S. ROF III to file an opposition. The Court also extended the Interim TRO through and including May 10, 2017.

U.S. ROF III filed an opposition to Debtor's Motion on April 24, 2017, arguing that the Court should deny Debtor's request for a TRO on procedural and substantive grounds. Debtor then filed a reply to U.S. ROF III's opposition on May 4, 2017.

The continued hearing on the Motion took place on May 10, 2017 at 2:30 p.m. The Court heard oral argument and took the matter under submission. Based on the pleadings, record, and oral argument of counsel, and for the reasons that follow, the Court denies the Motion and dissolves the Interim TRO.

I. STATEMENT OF FACTS

Debtor filed a voluntary Chapter 13 bankruptcy petition on April 15, 2016. Debtor then filed this adversary proceeding on October 18, 2016. Debtor's original adversary complaint ("Original Complaint") alleged that the named defendants violated the federal Truth in Lending Act ("TILA") and, therefore, that Debtor was entitled to damages, declaratory relief, and rescission of the mortgage transaction for his only piece of real property, located at 29184 Flowerpark Drive, Canyon Country, California 91387 ("the Property").

Debtor has designated the Property as his primary residence on his bankruptcy petition. U.S. ROF III foreclosed on the Property on September 10, 2015. Since January 2016, U.S. ROF III and Debtor have been engaged in unlawful detainer litigation in Los Angeles Superior Court ("the UD Action") (Case No. 16P00222). After this Court granted U.S. ROF III relief from the automatic stay to proceed with the UD Action, Debtor removed the UD Action to the bankruptcy

court. See Adv. Pro. No. 2:16-ap-01282-WB. U.S. ROF III subsequently filed a motion to remand the case to state court, which this Court granted on December 5, 2016. The UD Action is still pending in state court.[1]

On November 18, 2016, U.S. ROF III filed a motion in this adversary proceeding requesting dismissal of Debtor's Original Complaint.[2] In an order and memorandum of decision entered on January 26, 2017, the Court granted in part and denied in part U.S. ROF III's motion to dismiss. Specifically, the Court (1) dismissed Debtor's first cause of action, for damages and rescission under TILA, with leave to amend; (2) dismissed Debtor's second cause of action, for rescission under TILA, without leave to amend; and (3) denied U.S. ROF III's motion as to Debtor's third cause of action for declaratory relief. The Court also ordered Debtor to file an amended complaint by February 14, 2017.

Debtor filed his second amended adversary complaint ("SAC") on February 16, 2017. Debtor amended the SAC's first cause of action to clarify that he is only seeking damages, rather than rescission, for U.S. ROF III's alleged failure to timely serve him with notice of the assignment of his mortgage. Debtor's declaratory relief claim, now the fourth cause of action, contains more specific allegations but otherwise remains unchanged. However, Debtor has added the following to his SAC: (1) two new defendants, Barrett Daffin Frappier Treder & Weiss, LLP and Mortgage Electronic Registration Systems, Inc.; (2) a new claim, designated as the second cause of action, for wrongful foreclosure; and (3) a new claim, designated as the third cause of action, for various violations of the California Business and Professions Code. U.S. ROF III and the other defendants filed a motion to dismiss Debtor's SAC.[3]

Debtor filed the instant Motion on April 4, 2017, two days before U.S. ROF III's

---

[1] Debtor removed the UD Action a second time on December 19, 2016. See Adv. Pro. No. 2:16-ap-01561-WB. On May 31, 2017, the Court ordered it remanded again. See id. at Adv. Docket No. 11.

[2] Debtor filed a first amended adversary complaint prior to the January 24, 2017 hearing on U.S. ROF III's motion to dismiss the Original Complaint. See Adv. Docket No. 9. At that hearing, the Court granted Debtor leave to amend his complaint a second time so that he could address the deficiencies raised in the Court's ruling. Debtor agreed to file a second amended adversary complaint.

[3] The Court heard this matter on July 11, 2017.

summary judgment motion was to be heard in the UD Action.  The Court set the Motion for hearing on April 12, 2017 but, at Debtor's request, later issued the Interim TRO pending the April 12 hearing.

In his Motion, Debtor argues that he is entitled to a TRO because (1) he is likely to succeed on the merits of his wrongful foreclosure claim against Fay Servicing, LLC ("Fay"), the most recent servicer on the lien encumbering the Property, and (2) the balance of equities tips in his favor, as his loss of the Property through foreclosure constitutes irreparable harm.  Debtor also contends that the balance of equities tips so sharply in his favor that he does not need to show a high likelihood of success on the merits of his wrongful foreclosure claim.

In its opposition to Debtor's Motion ("Opposition"), U.S. ROF III contends that Debtor failed to serve the Motion on Fay and that Debtor failed to show a likelihood of success on the merits of his SAC.  Thus, U.S. ROF III argues that the Court should deny the Motion.  In his reply to U.S. ROF III's Opposition ("Reply"), Debtor maintains that he is entitled to a TRO because he has properly pleaded each cause of action against U.S. ROF III.

## II.  DISCUSSION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (K).  Venue is proper in this Court.  28 U.S.C. § 1409(a) (2012).

A. <u>Service of the Motion is Improper.</u>

Rule 7005[4] applies Civil Rule 5 to bankruptcy adversary proceedings.  Civil Rule 5(a)(1)(B) requires any pleading filed after the original complaint to be served on every party to the lawsuit, unless the court orders otherwise.  Fed. R. Civ. P. 5(a)(1)(B).  If a party is represented by an attorney, service must be made on the attorney, unless the court also orders service on the party.  Fed. R. Civ. P. 5(b)(1).

Here, Rule 7005 and Civil Rule 5 apply with respect to service of the Motion, since Debtor filed the Motion after filing his Original Complaint.  Thus, Debtor was required to serve

---

[4] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

the Motion on all parties – that is, all defendants – to the adversary proceeding, unless this Court ordered otherwise.

At the April 12, 2017 hearing, Debtor represented to the Court that he served his Motion on all defendants in this adversary proceeding. However, there is no record of such service: the docket only contains the declarations of notice and service that Debtor filed prior to the April 12 hearing. See Adv. Docket Nos. 24, 27. These documents indicate that Debtor only served notice of the hearing, not a copy of the Motion, on the parties listed on the proofs of service. Further, these documents show that only the Chapter 13 trustee and the United States Trustee were served. Since the April 12 hearing, Debtor has not filed any proof of service showing that all defendants were properly served with the Motion. Thus, it appears that neither U.S. ROF III nor Fay was served here.

Accordingly, the Court finds that service of the Motion is improper under Civil Rule 5. However, because U.S. ROF III was able to substantively respond to the Motion and is the defendant that is most affected by the Motion and the Interim TRO, the Court considers the merits of the Motion in the sections that follow.

B. <u>Legal Standard for Issuance of a TRO</u>

Rule 7065 incorporates Civil Rule 65, governing temporary restraining orders and preliminary injunctions, except that the bond posting requirement, set forth in Civil Rule 65(c), does not apply to the debtor, the trustee, or the debtor-in-possession. Fed. R. Bankr P. 7065.

The sole purpose of a TRO is to preserve the status quo pending a hearing on the moving party's application for a preliminary injunction. <u>Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.</u>, 415 U.S. 423, 439 (1974); <u>Hoechst Diafoil Co. v. Nan Ya Plastics Corp.</u>, 174 F.3d 411, 422 (4th Cir. 1999). Therefore, findings of fact and conclusions of law made in connection with the preliminary injunction are not binding adjudications. The court may come to opposite conclusions at a trial on the merits. <u>Univ. of Texas v. Camenisch</u>, 451 U.S. 390, 395 (1981); <u>Horphag Research Ltd. v. Garcia</u>, 475 F.3d 1029, 1035 (9th Cir. 2007). For example, for preliminary injunctive relief, the court need only find a probability that necessary facts will be established, not that such facts actually exist.

1. Sierra On–Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1423 (9th Cir. 1984). A TRO is
2. an extraordinary remedy that will be granted only in cases where the need for immediate relief is
3. clear. See Winter v. Natural Res. Def. Council, 555 U.S. 7, 22 (2008). The moving party has the
4. initial burden and "face[s] a difficult task in proving that [it is] entitled to this extraordinary
5. remedy." Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010).
6.     The required showing for a TRO is the same as that required to obtain a preliminary
7. injunction. Beverly Reid O'Connell & Karen L. Stevenson, Cal. Practice Guide: Fed. Civ. P.
8. Before Trial, Cal. & 9th Cir. Ed., § 13:43 (The Rutter Group 2017). In seeking a preliminary
9. injunction or TRO, the moving party must show that: (1) it is likely to succeed on the merits; (2)
10. it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of
11. equities tips in its favor; and (4) an injunction is in the public interest. Winter, 555 U.S. at 20;
12. see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).
13.     The Ninth Circuit has determined that its "serious questions" test, which takes somewhat
14. of a sliding scale approach, survives and is consistent with the U.S. Supreme Court's decision in
15. Winter. Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1085 (9th Cir. 2013) (quoting Alliance
16. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011)). Thus, in the Ninth
17. Circuit and as an alternative to the more traditional preliminary injunction analysis, "'serious
18. questions going to the merits' and a hardship balance that tips sharply toward the [moving party]
19. can support issuance of an injunction, assuming the other two elements of the Winter test are
20. also met." Id. "Serious questions" are those "questions going to the merits so serious,
21. substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more
22. deliberate investigation." Cottrell, 632 F.3d at 1134 (citing the Tenth Circuit's "modified test"
23. and explaining that it sets out a standard similar to the Ninth Circuit's "serious questions" test).

C. Debtor is Unlikely to Succeed on the Merits of His SAC.

25.     The "likelihood of success on the merits" factor is a threshold inquiry, such that the
26. remaining TRO/preliminary injunction elements need not be considered if the movant fails to
27. carry its burden on this factor. Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en
28. banc). To show that it is likely to succeed on the merits, the moving party does not need to prove

its case in full. Camenisch, 451 U.S. at 395. Rather, the moving party must only establish that there is a reasonable probability that the necessary facts can be proven at trial. Sierra, 739 F.2d at 1423. If the moving party is able to satisfy its burden on this factor, the burden then shifts to the non-moving party to show that its affirmative defense will likely succeed. Perfect 10, Inc. v. Amazon.com, Inc. 508 F.3d 1146, 1158 (9th Cir. 2007).

Here, while Debtor's SAC includes four claims for relief, the Court need only consider the Second Cause of Action for wrongful foreclosure and the Fourth Cause of Action for declaratory relief, as it is only on those claims that, if successful, Debtor would be entitled to an injunction. The First and Third Causes of Action for, respectively, violations of TILA and the California Business and Professions Code are claims for damages only.

1. Debtor is Unlikely to Succeed on His Second Cause of Action for Wrongful Foreclosure.

    i. Debtor's Wrongful Foreclosure Claim Against Fay

In the Motion, Debtor argues that the first TRO factor is satisfied because he has asserted sufficient facts in the SAC to show that Fay wrongfully foreclosed on the Property. According to Debtor, Fay violated the California Homeowners' Bill of Rights, codified in various sections of the California Civil Code, by failing to provide Debtor with a single point of contact for his loan modification application and by proceeding with foreclosure despite Debtor's pending loan modification application. Debtor has attached correspondence between himself and Jim Lawlor ("Lawlor"), his contact at Fay, to the SAC in support of his allegations.

Under California law, a mortgage servicer must provide a borrower with a single point of contact for communication purposes, if the borrower requests such information in connection with "foreclosure prevention alternative[s]." Cal. Civ. Code § 2923.7(a) (West 2017). The single point of contact is then responsible for providing the borrower with information and deadlines related to any loss mitigation options. Civ. § 2923.7(b)-(c). If the borrower ultimately submits a "complete" loan modification application, the mortgage servicer is prohibited from foreclosing on the borrower's real property as long as the borrower's application is still pending. Civ. § 2923.6(c). A loan modification application is considered "complete" when the "borrower

has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Civ. § 2923.6(c), (h).

In Debtor's case, the evidence attached to the SAC suggests that Lawlor was Debtor's single point of contact, as Debtor does not appear to have sent emails to or received letters from anyone else at Fay. Further, based on the contents of Debtor's emails to Lawlor, Lawlor carried out his duties as required by law, providing Debtor with instructions and the necessary documents to complete a loan modification application. Thus, Debtor has not presented any evidence to suggest that Fay violated California law in this respect.

The same is true of Debtor's allegations regarding his loan modification application. Based on the relevant exhibits attached to Debtor's SAC, Debtor mailed his loan modification application to Fay on September 8, 2015, but Fay apparently did not receive the application until on or about September 17, 2015. However, the foreclosure sale had already taken place on September 10, 2015. Therefore, the evidence suggests that no loan modification application was pending at the time of the sale, since Fay had not accepted any application from Debtor on or before September 10, 2015. Consequently, Debtor's application, even if complete, could not have served to postpone the foreclosure sale. Thus, Fay did not violate California law by proceeding with the sale on September 10.

Therefore, in light of the foregoing, Debtor's wrongful foreclosure claim against Fay is unlikely to succeed.

    ii. <u>Debtor's Wrongful Foreclosure Claim Against U.S. ROF III</u>

Debtor's Motion does not address the wrongful foreclosure claim against U.S. ROF III. However, based on Debtor's SAC and Reply, Debtor appears to argue that U.S. ROF III lacked standing to foreclose because there was no recorded assignment transferring the beneficial interest under the Property's deed of trust to U.S. ROF III. Thus, Debtor contends that U.S. ROF III fraudulently and wrongfully foreclosed on the Property.

Section 2932.5 of the California Civil Code requires the assignee of a mortgagee to record the assignment before foreclosing on the subject real property. See Civ. § 2932.5. However, California courts and federal courts interpreting Section 2932.5 have consistently held

that this Civil Code provision applies only to mortgages, not to deeds of trust. Calvo v. HSBC Bank U.S.A., N.A., 199 Cal. App. 4th 118, 122 (2011) (citing Stockwell v. Barnum, 7 Cal. App. 413, 417 (1908)); see also Haynes v. EMC Mortg. Corp., 205 Cal. App. 4th 329, 332-35 (2012) (collecting cases and noting that the proposition "[t]hat section 2932.5 applies only to mortgages is well settled"). In differentiating between the two, courts have reasoned that a mortgage "creates only a lien, with title to the real property remaining in the borrower/mortgagee, whereas a deed of trust passes title to the trustee with the power to transfer marketable title to a purchaser." Calvo, 199 Cal. App. 4th at 122 (citing Stockwell, 7 Cal. App. at 416-17). This distinction is the reason for the different recording requirements for mortgages and deeds of trust: "Section 2932.5 requires the recorded assignment of a mortgage so that a prospective purchaser knows that the mortgagee has the authority to exercise the power of sale. This is not necessary when a deed of trust is involved, as the trustee conducts the sale and transfers title." Haynes, 205 Cal. App. 4th at 336. Consequently, since "only the trustee [can] transfer title, it [is] immaterial who [holds] the note." Calvo, 199 Cal. App. 4th at 122. Therefore, when a deed of trust is involved, an assignee does not need to present evidence of a recorded assignment to establish standing to foreclose on real property. Haynes, 205 Cal. App. 4th at 336-37 ("[W]e conclude that the weight of authority, including the longstanding Stockwell opinion, mandates that where a deed of trust is involved, the trustee may initiate foreclosure irrespective of whether an assignment of the beneficial interest is recorded.").

     As a general matter, California law favors the use and finality of the nonjudicial foreclosure process. Miller & Starr, 5 Cal. Real Est. §§ 13:254, 13:255 (4th ed. 2016); see also Moeller v. Lien, 25 Cal. App. 4th 822, 830 (1994) (citing Civ. §§ 2924-2924k). The completion of a nonjudicial foreclosure sale creates a common law rebuttable presumption that the sale was "'conducted regularly and fairly.'" Melendrez v. D & I Inv., Inc., 127 Cal. App. 4th 1238, 1258 (2005) (quoting Brown v. Busch, 152 Cal. App. 2d 200, 204 (1957)). Further, if the trustee's deed states that all statutory requirements for notices of default and sale were satisfied, there is a statutory presumption that the sale was valid. Civ. § 2924(c). Such presumption is *prima facie* evidence of compliance if the purchaser at the sale was the foreclosing beneficiary. See id.;

-9-

Moeller, 25 Cal. App. 4th at 831.

A party challenging the foreclosure sale has the burden of proving (1) that there was some irregularity in the sale that sufficiently overcomes the presumption of validity and (2) that the elements of a wrongful foreclosure claim have been satisfied, such that the sale should be set aside. See Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 104-05 (2011). If the challenger also bases his wrongful foreclosure action on a claim of invalidity or lack of authority to foreclose, the challenger must show that he has standing to contest the allegedly void assignment or deed of trust. Saterbak v. JPMorgan Chase Bank, N.A., 245 Cal. App. 4th 808, 813-14 (2016). As a general rule, in the post-foreclosure context, a borrower has no standing to object to a trustee's sale based on alleged defects in an assignment, unless the assignment is void and not merely voidable. Yvanova v. New Century Mortg. Corp., 62 Cal. 4th 919, 927 (2016).

Under California law, courts generally have the power to set aside a foreclosure sale when "there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." Lona, 202 Cal. App. 4th at 103. To prevail on a wrongful foreclosure claim, the party challenging the sale must show:

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering it.

Id. at 104. Generally, courts will not set aside a completed foreclosure sale when the sole challenge to the sale is a procedural irregularity that did not cause prejudice or harm to the party challenging the sale. 6 Angels, Inc. v. Stuart-Wright Mortg., Inc., 85 Cal. App. 4th 1279, 1284 (2001). If the borrower is the party challenging the sale, he will typically be unable to show prejudice if he failed to tender payment of the underlying debt when it came due. See Lona, 202

Cal. App. 4th at 112 ("as a condition precedent to an action to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security").

Here, U.S. ROF III essentially argues that (1) the statutory presumption of validity arose due to recitals in the trustee's deed upon sale and (2) Debtor has not properly pleaded the elements of a wrongful foreclosure claim in order to overcome that presumption. Debtor does not spend much time in his Reply responding to U.S. ROF III's arguments; he only reiterates that neither Fay nor the trustee who conducted the sale, Barrett Daffin Frappier Treder & Weiss, LLP ("Barrett"), had authority to conduct the sale.

In light of the relevant law cited above, the Court finds that Debtor is unlikely to succeed on his wrongful foreclosure claim against U.S. ROF III.

As a preliminary matter, the absence of a recorded assignment naming U.S. ROF III as the assignee does not automatically render the foreclosure sale invalid under California law. Since the loan documents in this case include a deed of trust, U.S. ROF III was not required to record an assignment prior to foreclosing on the Property. Therefore, Debtor cannot rely on this alleged defect in the chain of title to support his wrongful foreclosure claim against U.S. ROF III.

Further, in this case, the trustee's deed upon sale contains recitals stating that all statutory requirements for notices of default and sale were satisfied prior to foreclosure. Thus, the statutory presumption of validity arises under California Civil Code Section 2924, and Debtor, as the party challenging the sale, has the burden of proving that the presumption should not apply.

In that regard, Debtor's wrongful foreclosure claim aims to show that the statutory presumption of validity should not apply because of alleged fraud on the part of U.S. ROF III and other defendants. As pleaded in the SAC, this alleged fraud arises from all defendants' lack of authority to conduct the foreclosure sale in the first place. With respect to U.S. ROF III, Debtor bases his claim of lack of authority on an alleged defect in the chain of assignments. As discussed above, the Court has already determined that U.S. ROF III and its agents did not need to present evidence of a recorded assignment to U.S. ROF III before proceeding with

foreclosure. However, assuming for the sake of argument that such evidence were required, Debtor would first need to show that he has standing to challenge the various assignments in order to maintain his wrongful foreclosure claim. The assignments that Debtor has included with his SAC do not appear to be fraudulent on their face, meaning that none can be considered void at their inception. Thus, under Yvanova, Debtor has no standing to challenge the foreclosure sale based on such assignments. Consequently, even if U.S. ROF III had been required to record an assignment prior to commencing the sale, Debtor's wrongful foreclosure claim would still fail for lack of standing.

Further, even if Debtor were able to establish standing to challenge the relevant assignments, Debtor still has not pleaded all of the required elements for a wrongful foreclosure claim. First, Debtor has not presented any evidence, aside from his own assertions, that Barrett, Fay, or U.S. ROF III caused an illegal, fraudulent, or willfully oppressive sale of the subject property. Second, even if there were a defect in the chain of assignments, Debtor has not shown that he was prejudiced or harmed by such defect, especially since the servicer, Fay, remained the same despite the transfer of the beneficial interest to U.S. ROF III. Thus, had Debtor wished to cure the default on the loan, he still would and should have known to send the cure payment to Fay, especially since Fay was listed as the party to contact on the Notice of Default. Third and finally, Debtor has not presented any evidence to show that he paid the debt owed on the Property or that he was excused from tendering such payment. The only evidence Debtor has proffered is an "Affidavit of Monetary Truth," which is a declaration from Debtor containing self-serving statements about his supposed tender of the debt amount to Fay.

As a final point, U.S. ROF III correctly asserts that Debtor must plead any claim of fraud with particularity. Civil Rule 9, made applicable to bankruptcy adversary proceedings by Rule 7009, imposes this requirement, as does California law. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); Lazar v. Sup. Ct., 12 Cal. 4th 631, 645 ("'In California, fraud must be plead specifically; general and conclusory allegations do not suffice. . . . This particularity requirement

necessitates pleading *facts* which show how, when, where, to whom, and by what means the representations were tendered.'"). Debtor's SAC contains only general allegations of fraud, which do not comply with the requirements of Civil Rule 9.

Thus, for the reasons discussed above, the Court finds that Debtor is unlikely to succeed on his wrongful foreclosure claim against U.S. ROF III.

2. <u>Debtor is Unlikely to Succeed on His Fourth Cause of Action for Declaratory Relief.</u>

Debtor's Motion does not address his likelihood of success with respect to his claim against U.S. ROF III for declaratory relief. However, U.S. ROF III argues in its Opposition that Debtor's declaratory relief claim fails because (1) it depends on the success of his other causes of action, which are unlikely to succeed, and (2) it is based entirely on a past injury, and declaratory relief is only appropriate when prospective wrongs are involved.

Federal courts have authority to grant declaratory relief, which is deemed to have the force and effect of a final judgment. 28 U.S.C. § 2201(a) (2012). Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." <u>Guerra v. Sutton</u>, 783 F.2d 1371, 1376 (9th Cir. 1986). A plaintiff has standing to bring a declaratory relief claim only if he is able to show "'a very significant possibility' of future harm.'" <u>Coral Constr. Co. v. King Cnty.</u>, 941 F.2d 910, 929 (9th Cir. 1991) (internal citations omitted). Past injury, along with abstract or hypothetical harm, is insufficient. <u>See id.</u>; <u>San Diego Cnty. Gun Rights Comm. v. Reno</u>, 98 F.3d 1121, 1126 (9th Cir. 1996).

Here, Debtor's declaratory relief claim arises entirely out of the foreclosure sale that U.S. ROF III completed in September 2015. As a result of this allegedly wrongful sale, Debtor seeks a judgment declaring him to be the rightful owner of the Property. In the SAC, Debtor asserts that without such a judgment, he will continue to suffer from "anxiety, severe mental and emotional distress and extra financial burden," along with "daily fear of eviction" and "continued harassment" from U.S. ROF III. Although such harm could be construed as future injury, Debtor has not presented any evidence, with the Motion or the SAC, to show that there is "a very

1 significant possibility" of this harm or that such harm is more than merely hypothetical. Thus,
2 under the relevant case law, Debtor lacks standing to bring his declaratory relief claim in the first
3 place.
4     Further, even if Debtor had standing in this instance, the success of Debtor's declaratory
5 relief claim depends entirely on Debtor's ability to establish that the foreclosure sale should be
6 set aside as wrongful. As noted above in Section C.1, Debtor's likelihood of succeeding on his
7 wrongful foreclosure claim is low. Therefore, Debtor has failed to present the Court with
8 sufficient grounds to determine that the foreclosure sale was wrongful. Consequently, Debtor is
9 unlikely to obtain a judgment naming him as the rightful owner of the Property.
10     Accordingly, based on the foregoing, the Court finds that Debtor is unlikely to succeed
11 on his declaratory relief claim.
12 D. <u>Because Debtor Has Not Satisfied the Threshold TRO Factor of Likelihood of Success on the
13     Merits, the Court Does Not Need to Consider the Remaining TRO Factors.</u>
14     As discussed previously in Section C, Debtor has failed to satisfy the "likelihood of
15 success on the merits" factor, which is a threshold inquiry. <u>Garcia</u>, 786 F.3d at 740. Thus, the
16 remaining TRO factors do not need to be considered. Nevertheless, the Court includes a
17 discussion of them below for completeness. Ultimately, even if Debtor had shown a likelihood
18 of success on the merits, the relevant remaining TRO factors would have weighed against
19 granting Debtor's requested relief.
20 E. <u>Debtor Has Not Shown That He is Likely to Suffer Irreparable Harm.</u>
21     The second TRO factor requires the moving party to demonstrate that there is "immediate
22 threatened harm." <u>Caribbean Marine Servs. Co., Inc. v. Baldridge</u>, 844 F.2d 668, 674 (9th Cir.
23 1988). The movant must show a causal connection between the alleged harm and the conduct to
24 be enjoined, thereby allowing a court to conclude that an injunction is necessary to curb the risk
25 of harm. <u>Garcia v. Google, Inc.</u>, 766 F.3d 929, 938 (9th Cir. 2014), *aff'd on reh'g*, <u>Garcia</u>, 786
26 F.3d at 740. If the movant seeks a TRO based on alleged past harm, the movant must show that
27 there is a real and immediate threat that the harm will occur again. <u>Munns v. Kerry</u>, 782 F.3d
28 402, 410-11 (9th Cir. 2015) (citing <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102-03 (1983)).

Generally, if adequate compensatory damages are available to remedy the harm, this fact weighs against finding irreparable harm. Sampson v. Murray, 415 U.S. 61, 90 (1974).

The Ninth Circuit has previously held that "the loss of an interest in real property constitutes an irreparable injury." Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1159 (9th Cir. 2011) (potential eviction from low-income apartment qualified as irreparable injury); Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 661 (9th Cir. 1988) (potential loss of property through foreclosure constituted irreparable injury). However, a looming foreclosure may not qualify as irreparable harm if the homeowner cannot afford to pay the mortgage on the property. Alcaraz v. Wachovia Mortg. FSB, 592 F. Supp. 2d 1296, 1305-06 (E.D. Cal. 2009).

In the Motion, Debtor does not devote much time to discussion of this TRO factor, stating only that the loss of the Property through foreclosure "unquestionably constitutes an irreparable injury." This concept is generally true, but a close examination of the relevant case law, including those cases cited by Debtor in the Motion, indicates that the courts that made such a finding did so when a foreclosure sale was imminent. In Debtor's case, the foreclosure sale has already occurred. Thus, Debtor's cited legal authority is unpersuasive. Further, because U.S. ROF III has already foreclosed on the Property, the foreclosure cannot serve as a basis for the TRO, unless Debtor is able to show that there is a real and immediate threat of foreclosure occurring again. Debtor has not asserted any facts or provided any evidence to show that such a threat is cognizable and imminent.

Moreover, Debtor's possible eviction from the Property does not qualify as an irreparable injury. Unlike the tenants in Park and the property owner in Sundance, Debtor's interest in the Property has already been extinguished through foreclosure. Thus, the TRO would not serve to prevent any loss of interest that has not already occurred.

Accordingly, for the reasons discussed above, the "irreparable injury" factor is not satisfied here.

F.  The Balance of Equities Does Not Tip in Debtor's Favor.

The third TRO factor requires a court to "balance the competing claims of injury and . . .

consider the effect on each party of the granting or withholding of the requested relief." Aurora World, Inc. v. Ty, Inc., 719 F. Supp. 2d 1115, 1169 (C.D. Cal. 2009); see also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 827 (9th Cir. 1993) ("In evaluating the balance of hardships a court must consider the impact granting or denying a motion for a preliminary injunction will have on the respective enterprises."). While the "basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits," Chalk v. U.S. Dist. Ct., 840 F.2d 701, 704 (9th Cir. 1988), the status quo is not simply any situation before the filing of the lawsuit, but rather the last uncontested status that preceded the parties' controversy. GoTo.Com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (overruled on other grounds).

In his Motion, Debtor argues that if no TRO is issued, U.S. ROF III will be able to proceed with the UD Action and render Debtor homeless. Yet Debtor defaulted on his mortgage some time ago, which resulted in U.S. ROF III's foreclosure of the Property in the first place. Consequently, Debtor's anticipated harm of eviction and homelessness is a result of the foreclosure sale that he is unlikely to overturn. On the other hand, U.S. ROF III foreclosed on the Property almost two years ago and has yet to take possession of its Property. U.S. ROF III will be harmed if this process is delayed further. Thus, it is difficult to see how the balance of equities can tip in Debtor's favor, in light of these circumstances.

Accordingly, based on the foregoing, the Court finds that Debtor has failed to show that the balance of equities tips in his favor.

G. The Requested TRO Would Not Affect the Public Interest, and Therefore, the Court Does Not Need to Consider This Factor.

If the requested injunction has the potential to affect the general public, a court must consider the public interest and assess the impact that granting or denying injunctive relief would have on non-parties to the lawsuit. League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, 752 F.3d 755, 766 (9th Cir. 2014); see also Winter, 555 U.S. at 25. Otherwise, if the injunction is anticipated to affect only the parties, "the public interest will be at most a neutral factor in the analysis rather than one that favors granting or

denying the preliminary injunction." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138-39 (9th Cir. 2009).

Here, Debtor's requested TRO will have no effect on the general public, since the TRO would only impact Debtor's ability to remain in the Property and U.S. ROF III's ability to proceed with the UD Action. Thus, this Court declines to consider the public interest in assessing whether a TRO should be issued.

H. Under the Ninth Circuit's "Serious Questions" Test, Debtor Has Failed to Show That the Court Should Issue a TRO.

In the Motion, Debtor argues for application of the Ninth Circuit's "serious questions" test instead of the traditional TRO analysis that the U.S. Supreme Court set out in Winter. However, even if the Court applies the "serious questions" test here, the relevant facts indicate that a TRO should not be issued.

Debtor's wrongful foreclosure claim is the crux of his SAC: if that claim fails, most of the other claims will also fail. As discussed above in Section C.1, the evidence that Debtor has presented to support his wrongful foreclosure claims against Fay and U.S. ROF III does not raise "serious questions going to the merits" of his allegations. Rather, this evidence leads to the conclusion that Debtor's claims are flimsy at best. With respect to Fay, no loan modification application was on file on the date of the foreclosure sale, and consequently, Fay did not violate any applicable state law by proceeding with the sale. Similarly, with regard to U.S. ROF III, the proffered chain of assignments, though perhaps incomplete, is not fraudulent on its face: therefore, none of the assignments can be considered void at their inception, meaning that Debtor has no standing to challenge the foreclosure sale based on such assignments. Further, despite Debtor's arguments to the contrary, U.S. ROF III did not need to provide evidence of an assignment naming U.S. ROF III as the assignee in order to foreclose on the Property. Thus, the SAC's factual allegations and the relevant law lead to clear conclusions about Debtor's wrongful foreclosure claims, rather than raising serious questions as to their merits.

Yet even if the Court were to accept that, at a minimum, Debtor's SAC raises serious questions about the foreclosure sale's validity, the balance of equities does not tip sharply in

Debtor's favor, as discussed previously in Section F. Although Debtor stands to lose possession of the Property if U.S. ROF III's UD Action is permitted to proceed in state court, this possibility is one that Debtor had more than enough time to prepare for and mitigate. The foreclosure sale occurred nearly two years ago, and in the time since, Debtor has done nothing to prepare for the day when he would need to vacate the Property. Debtor's refusal to acknowledge the reality of his situation weakens the magnitude of any harm that he may ultimately suffer.

Therefore, under the Ninth Circuit's alternative "serious questions" test, Debtor has not shown that he is entitled to a TRO.

### III. CONCLUSION

In summary, the Court finds that Debtor has failed to show that the Court should issue a TRO in this instance. In applying the traditional TRO analysis, the Court finds (1) that Debtor has not shown a likelihood of success on the merits of his SAC; (2) that Debtor's failure in making such a showing precludes consideration of the remaining TRO factors; and (3) that even if such factors were considered, the majority of them would weigh against granting a TRO in this case. Similarly, in applying the Ninth Circuit's "serious questions" test, the Court finds that Debtor has not shown serious questions going to the merits of his SAC or an equities balance that tips sharply in his favor. Accordingly, under Civil Rule 65, the Court denies the Motion and dissolves the Interim TRO of April 6, 2017.

A separate order consistent with this memorandum of decision will be entered.

Date: July 14, 2017

Julia W. Brand
United States Bankruptcy Judge